UNITED STATES of America, Plaintiff–Appellant,

v.

Jackie PRESSER; Harold Friedman; and Anthony Hughes, Defendants–Appellees.

No. 87–3896.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 2, 1988.

Decided April 25, 1988.

Frank J. Marine (argued), U.S. Dept. of Justice, Washington, D.C., for U.S.

John Climaco (argued), Paul S. Lefkowitz, Roger M. Synenberg, Cleveland, Ohio, for Presser.

Michael L. Climaco, Cleveland, Ohio, for Hughes.

Paul Cambria (argued), Lipsitz, Green, Fahringer, Roll, Buffalo, N.Y., for Friedman.

Before MARTIN, GUY and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

The United States appeals a pre-trial order of the district court entered in its prosecution of Jackie Presser, Harold Friedman and Anthony Hughes. The district court ordered the government to disclose "any and all impeachment evidence in the possession of the prosecution which tends to negate guilt...." The government argues that the district court lacked authority to issue the discovery order because it compels the disclosure of material exempted from pre-trial discovery by the Jencks Act, 18 U.S.C. § 3500, as well as material whose disclosure is not required under either Rule 16 of the Federal Rules of Criminal Procedure or *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. We agree with the government's contentions and, accordingly, vacate the order of the district court.

I

On May 16, 1986, a federal grand jury handed up an indictment charging that Presser, Friedman and Hughes abused their positions as local union officers by conspiring to employ and by employing "ghost" employees at Local 507 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and Local 19 of the Bakery, Confectionary and Tobacco Workers International Union, AFL–CIO. The indictment charges that Presser, as the Secretary–Treasurer of Local 507, Friedman as President of Local 507 and of Local 19, and Hughes as the Recording Secretary for Local 507, caused union funds to be paid to supposed union employees Jack Nardi, Allen Friedman, George Argie, and Hughes, as a business agent for Local 19, for servic-

es which the defendants knew none of the recipients of the funds had rendered.

The indictment charges that the defendants' actions violated provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) & (d), and of the Labor–Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 439(b) & 501(c). The indictment also charges that Presser violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1027, by making false statements and concealing facts about the "ghost" employees on documents required to be maintained under ERISA.

The defendants have notified the government and the district court that they intend to defend against the charges, at least in part, on the ground that their actions were authorized by the government. The defendants claim that during the period of time charged in the indictment, Presser and Hughes were "cooperating citizens" for the Federal Bureau of Investigation (FBI) and that the FBI authorized their activities. The government has provided the defendants with sworn statements from the three FBI agents who supposedly acted as contact agents for the defendants.[1] Although the statements may tend to support the defendants' claim that they were directed to employ the "ghost" employees by the FBI, the government maintains that the defendants' conduct was not in fact authorized and, consequently, that their defense is false.

On September 10, 1986, Presser and Hughes filed a motion for discovery of "all information to which they are entitled under Rule 16(a) of the Federal Rules of Criminal Procedure and ... pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ... which may

be favorable to the defendants or material to their guilt or punishment or which could lead to such favorable information or information material to their guilt or punishment." [2] Accompanying this broad discovery request were 211 specific requests for material related to the defendants' authorization defense.

On October 10, 1986, the government responded to the discovery motion. It agreed to provide before trial discovery of materials required to be disclosed by Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland* but opposed the discovery of impeaching material about government witnesses because such material is exempt from pre-trial disclosure by the Jencks Act. The government also submitted materials to the district court *in camera* to determine their discoverability under the *Brady* doctrine.

In December 1986, Presser and Hughes filed a three-volume supplemental memorandum in support of their September 1986 discovery request for exculpatory material and impeachment evidence.

The government responded to this memorandum in January 1987, claiming that it already had provided the defendants with all exculpatory information it was required to disclose before trial concerning the authorization defense. The government stated that all impeachment evidence in its possession concerning a government witness's credibility, would be disclosed during trial in accordance with the Jencks Act.

In March 1987, the district court ordered the government to provide the defendants with immediate discovery of "all documents, memoranda, notes or interview reports ... tangible objects and other information, including, but not limited to, videotapes, other recordings or any summaries or transcripts whether or not they are work

---

**1.** The three FBI agents were Robert Friedrick, Martin McCann and Patrick Foran. According to the government, Friedrick and McCann are no longer FBI agents.

**2.** Fed.R.Crim.P. 16(a) lists specific kinds of evidence that must be disclosed to the defense before trial such as statements of the defendant, the defendant's prior criminal record, and re-

ports of physical or mental examinations and tests that the government intends to use in its case-in-chief at trial or that are material to the preparation of the defense. The rule specifically states that it does not authorize the pre-trial disclosure of material exempted from pre-trial discovery by the Jencks Act. Fed.R.Crim.P. 16(a)(2).

product which contains exculpatory material" and "all documents, memoranda, statements, affidavits, and depositions, if any, which have been provided by the government to members of the news media...."

On April 30, 1987, the defendants filed another Supplemental Memorandum for Disclosure of Impeachment Material, contending that "impeachment material need not be exculpatory in order to invoke the Brady duty to disclose." Accordingly, the defendants requested "complete copies of any and all impeachment material relating to prospective witnesses in this case and, in particular, to government agents McCann, Foran and Friedrick."

The government responded to the April 1987 Supplemental Memorandum in May, reasserting its contention that impeachment materials for government witnesses need not be produced until trial under the Jencks Act. The government further responded that the *Brady* doctrine never requires the government to provide discovery of evidence unfavorable to the defendants, such as government evidence which could impeach defense witnesses.

On August 21, 1987, the district court granted the defendants' motion for disclosure of impeachment material stating:[3]

Defendants specifically request that impeachment material, separate and apart from exculpatory material which this Court has previously ordered to be disclosed, is discoverable and request the production of such material. The governments' response to the above-mentioned motion first directs the Courts attention to a point which the parties do agree. The United States concedes that it must disclose to the defendants impeaching materials within its possession relating to witnesses called by the government to testify against the defendants. However, the government raises two issues upon which the parties disagree. The issues are as follows: 1) must impeaching material be produced before trial or may they be produced at trial in time for the defendants to make use of them, and 2) must the government

provide to the defendants impeaching materials *unfavorable* to the defense which the government may use to cross examine witnesses called to testify on behalf of the defendants.

The Supreme Court has defined impeachment material as 'evidence favorable to an accused ... so that, if disclosed and use effectively, it may make the difference between conviction and acquittal.' *United States v. Bagley*, 473 U.S. [667], 105 S.Ct. 3375, 3380 [87 L.Ed. 2d 481] (1985). Impeachment evidence need not be exculpatory in the traditional sense of tending to negate guilt. Rather, such material deals with the credibility of witnesses.

In *Giglio v. United States*, 405 U.S. 150, 154 [92 S.Ct. 763, 766, 31 L.Ed.2d 104] (1972), the Supreme Court held that:

When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule.

The general rule articulated in *Giglio*, is the Brady rule. See: *Brady v. Maryland*, 373 U.S. 206 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963).

In, addressing the issue of the timing of disclosure, this Court finds that any and all impeachment material in the possession of the prosecution is to be turned over to the defense forthwith. Specifically, regarding the impeachment testimony relating to government agents McLann, Foran, Friedrick and any other present or former agents this Court believes that these witnesses credibility will be material to the establishment of defendants authorization defense. Accordingly, defenses' motion for disclosure of impeachment material is Hereby Granted.

On September 4, 1987, the government filed a motion asking the court to reconsider its August 21, 1987, discovery order. In the motion the government stated that in the interests of narrowing the issues, it would comply with the discovery order by providing immediate discovery of any impeachment materials in its possession not

---

**3.** The district court's order is reproduced as it appears in the record.

protected by the Jencks Act relating to government witnesses Allen Friedman, Jack Nardi and George Argie.[4] The government refused, however, to disclose Jencks Act materials related to those witnesses' testimony and also refused to disclose materials unfavorable to the defense which the government might use at trial to impeach defense witnesses or to rebut defenses.

The district court held a hearing on the government's motion for reconsideration on September 4, 1987. After the hearing, the court amended its August discovery order, attempting to clarify that the order required the immediate disclosure only of impeachment evidence in the possession of the government "which tends to negate guilt."

At the September 4, 1987, hearing, the government argued that it was not required to disclose Jencks Act impeachment material before trial and that it was not required to disclose impeachment material concerning defense witnesses at any time because such evidence is, in its view, unfavorable to the defense. Accordingly, the government informed the court that it did not intend to comply with the discovery order, even as amended, and requested the court to "impose the appropriate sanctions" so that the government could appeal the issue. The court orally responded:

> I will deny that request. You may try your case the way you wish to try it. You may find when you get to trial you may not get a witness on if you haven't complied with my order, and you can go about what you want to do, but that's my statement in regard to that, counsel.

## II

Before resolving the substantive issue raised in this appeal, the court must first address the contention that it does not have jurisdiction over the appeal. Defend-

ants-appellees have filed a motion to dismiss the appeal on the ground that the lower court has not entered an order suppressing or excluding evidence. The government responds that the court's oral statement that the government's failure to comply with the discovery order will jeopardize its use of witnesses whose statements or other impeachment materials are withheld constitutes a conditional suppression order and, consequently, is sufficient to invoke this court's jurisdiction under 18 U.S.C. § 3731.[5]

18 U.S.C. § 3731 provides, *inter alia,*

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence ... not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

In *United States v. Battisti,* 486 F.2d 961 (6th Cir.1973), this court discussed at length the appealability of a pre-trial discovery order under 18 U.S.C. § 3731. In that case, the district court ordered the government to disclose to the defense before trial the names and addresses of all Government witnesses and the known records of prior criminal convictions of prospective witnesses. The court's order provided:

> The failure of the Government to comply with this order will result in the exclusion of the testimony of the witness or witnesses to which the information pertains.

*Battisti,* 486 F.2d at 965.

While considering whether the district court's order in *Battisti* sufficiently indi-

---

4. The government characterized these impeachment materials as "materials which relate to misconduct of these witnesses not resulting in convictions." The government also notified the court that its voluntary disclosure of this impeachment evidence was not a concession "that these materials are discoverable at this time."

5. In the alternative, the government requests the court to exercise its power to issue a writ of mandamus ordering the district court either to vacate the discovery order or to enter a suppression order so that the government may pursue an appeal. Because we hold that jurisdiction over the appeal exists under 18 U.S.C. § 3731, we do not reach the merits of the government's petition for a writ of mandamus.

cated that evidence would be excluded if the government did not comply with the discovery order, we noted that the statute mandates that "[t]he provisions of this section shall be liberally construed to effectuate its purposes," which we concluded were to provide appellate review of district court decisions against the United States on specific matters before jeopardy attaches to a criminal prosecution. *See id.,* at 967. We also stated that

> [p]erhaps the most convincing argument in favor of the appealability of the order in the present case is contained in the legislative history [of 18 U.S.C. § 3731]. It was the aim of Congress to give the Government a right to appeal discovery orders which go beyond the rules of criminal procedure. S.Rep. 91–1296 (91st Cong., 2d Sess.), p. 5,

*Ibid.* Accordingly, we concluded,

> [t]he Supreme Court has observed that it is not the label but the substance of the ruling which determines the question of appealability.... The substance of the instant order is that the evidence will be excluded if the Government does not comply with the order. We conclude that this is an order 'excluding evidence' within the spirit, if not the literal wording, of 18 U.S.C. § 3731.

*Ibid.* (citation omitted).

Although we acknowledge that there is somewhat more ambiguity about the district court's future actions in this case than there was in *Battisti,* we view the district court's oral statement as evidencing an intent to exclude government evidence if the government does not comply with its dis-

covery order and consequently, its statement qualifies as an appealable order "within the spirit, if not the literal wording, of 18 U.S.C. § 3731." Accordingly, this court has jurisdiction over this appeal under 18 U.S.C. § 3731.[6]

## III

The substantive issue to be resolved is whether the district court possessed the authority to order the government to disclose before trial "any and all impeachment evidence ... which tends to negate guilt?" The district court concluded that the government is required to disclose the impeachment evidence by virtue of the rule of *Brady v. Maryland,* that the government is under a general duty to disclose evidence favorable to the accused. In support of its order, the court cited the Supreme Court decisions in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In the district court's view, these decisions hold that impeachment evidence of key government witnesses is *Brady* material and therefore, subject to disclosure to the defense before trial.

Close examination of these decisions, particularly in the context of the Court's other decisions construing the dimensions of the *Brady* doctrine, leads us to conclude that the district court overstated the meaning of *Brady* and *Giglio.*

The Supreme Court repeatedly has emphasized that

> We also note that we do not view our decision that the district court's oral statement in this case is an appealable order under 18 U.S.C. § 3731 as conflicting with our holding in *United States v. Zipkin,* 729 F.2d 384, 389 (6th Cir. 1984), that a written order of a judge should speak for itself and should not be varied by parol evidence as to what was meant by its provisions. In this case, the district court's discovery order was written but the sanction order was oral. The sanction order is the order which provides jurisdiction over the appeal and we have interpreted that order as it appears in the context of the record.

**6.** We are troubled by the district court's refusal to enter a written order sanctioning the government for its noncompliance with the discovery order after the government specifically requested such an order from the district court. A district court cannot abort the government's right to an appeal simply by declining to rule on a matter when asked to do so. Congress expressly provided the government with the right to appeal its contention that the district court does not have the authority to make this discovery order at this stage of the proceeding, that is, before jeopardy attaches. Indeed, once jeopardy does attach, the government is unable to appeal the issue unless it obtains a conviction and the defendant decides to seek an appeal.

[t]he *Brady* rule is based on the require-ment of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncov-ered, but to ensure that a miscarriage of justice does not occur. Thus, the prose-cutor is not required to deliver his entire file to defense counsel, but only to dis-close evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial.

*Bagley,* 473 U.S. at 675, 105 S.Ct. at 3380 (footnotes omitted).

Since establishing the *Brady* rule, the Court has adhered to its subsequent state-ment that "[t]here is no general constitu-tional right to discovery in a criminal case, and *Brady* did not create one...." *Weath-erford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). In fact, the Court has explained that the basis for the *Brady* rule, "the Due Process Clause[,] has little to say regarding the amount of discovery which the parties must be afforded." *Wardius v. Oregon,* 412 U.S. 470, 474, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82 (1973). It speaks "to the bal-ance of forces between the accused and his accuser." *Ibid.*

Thus, the *Brady* doctrine, in its purest form, is the rule of law that the Due Pro-cess Clause is violated when the govern-ment achieves a conviction through the use of perjured testimony, *e.g., Napue v. Illi-nois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), or by withholding a confession of guilt by someone other than the accused, *e.g., Brady v. Maryland,* or by withholding evidence "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce,"[7] *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). The doctrine evolved out of the tenet of consti-tutional law that it is fundamentally unfair

for the government to obtain a conviction in such circumstances, regardless of wheth-er the government suppressed the evidence knowingly or unknowingly. However,

unless the omission deprived the defend-ant of a fair trial, there [is] no constitu-tional violation requiring that the verdict be set aside.... to reiterate a critical point, the prosecutor will not have violat-ed his constitutional duty of disclosure unless his omission is of sufficient signif-icance to result in the denial of the de-fendant's right to a fair trial.

*Agurs,* 427 U.S. at 108, 96 S.Ct. at 2399–2400.

■ Accordingly, the obligation the *Bra-dy* rule imposes on the government is

the obligation to turn over evidence in its possession that is *both* favorable to the accused and material to guilt or punish-ment.... [A] majority of this Court has agreed, "[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reason-able probability' is a probability suffi-cient to undermine confidence in the out-come."

*Pennsylvania v. Ritchie,* —— U.S. ——, ——, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987) (citations omitted) (emphasis added).

■ The Court also has made it clear that while the *Brady* rule imposes a gener-al obligation upon the government to dis-close evidence that is favorable to the ac-cused and material to guilt or punishment, the government typically is the sole judge of what evidence in its possession is subject to disclosure. If it fails to comply ade-quately with a discovery order requiring it to disclose *Brady* material, it acts at its own peril. *See Pennsylvania v. Ritchie,*

---

7. An example of such evidence is "fingerprint evidence demonstrating that the defendant could not have fired the fatal shot." *Agurs,* 427 U.S. at 110 n. 18, 96 S.Ct. at 2401 n. 18.

 In *Agurs,* the prosecutor failed to disclose to the defense the fact that the victim had a prior criminal record of guilty pleas to charges of assault and of carrying a deadly weapon. While this material was exculpatory in that it related

to the defendant's claim of self-defense, the Court ultimately held that the failure to disclose the evidence did not constitute a *Brady* violation because there was no reasonable doubt about the defendant's guilt "whether or not the [omit-ted] evidence [was] considered, [and, thus,] no justification for a new trial." *Agurs,* 427 U.S. at 113, 96 S.Ct. at 2402.

107 S.Ct. at 1003; *accord Bagley*, 473 U.S. at 682–83, 105 S.Ct. at 3384. But significantly, if the government does fail to disclose *Brady* material, the defendant has a constitutional remedy for the nondisclosure *only* if the defendant can show that there is a reasonable probability that "the omission deprived the defendant of a fair trial." *Agurs*, 427 U.S. at 108, 96 S.Ct. at 2400.

In a footnote to *Agurs*, the Court dismissed an argument that the definition of material evidence under the *Brady* rule should "focus on the impact of the undisclosed evidence on the defendant's ability to prepare for trial, rather than the materiality of the evidence to the issue of guilt or innocence." *Agurs*, 427 U.S. at 112 n. 20, 96 S.Ct. at 2401 n. 20. The Court stated:

[s]uch a standard would be unacceptable for determining the materiality of what has been generally recognized as '*Brady* material' for two reasons. First, that standard would necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense. Second, such an approach would primarily involve an analysis of the adequacy of the notice given to the defendant by the State, and it has always been the Court's view that the notice component of due process refers to the charge rather than the evidentiary support for the charge. *Ibid.*

The Court's decisions in *Giglio* and *Bagley* are not a departure from its reasoning in *Agurs* or from the Court's other *Brady* decisions. In both cases the Court held that the failure of the prosecution to disclose to the defense that the prosecution's key witnesses had personal interests at stake when they testified during the trials was material evidence which should have been disclosed pursuant to the *Brady* doctrine, because had the material been "disclosed and used effectively, it [might have made] the difference between conviction and acquittal." *Bagley*, 473 U.S. at 676, 105 S.Ct. at 3380–81.

In *Giglio*, the prosecution had promised a coconspirator of the defendant that he would not be prosecuted if he testified against the defendant. The Court found it significant that the government's case against the defendant rested "almost entirely" upon the coconspirator's testimony. Consequently, the Court concluded that if the information had been disclosed to the defense, there was a reasonable probability that the defendant could have changed the outcome of the trial by attacking the credibility of the coconspirator's testimony. Accordingly, the Court vacated the defendant's conviction and remanded the case for a new trial. *Giglio*, 405 U.S. at 154–55, 92 S.Ct. at 766.

Similarly, in the more recent case of *Bagley*, the prosecution failed to disclose to the defense that the government's two key witnesses, two private security guards, had a contract to supply information to the Bureau of Alcohol, Tobacco and Firearms, and that payment under the contract was conditioned upon whether the information supplied by the guards led to a successful prosecution of the defendant. The Court reasoned that because the defense specifically requested discovery of evidence of any inducements that had been made to the guards to testify against the defendant, the prosecutor's failure to disclose that such inducements existed made it likely that defense counsel believed the witnesses could not be impeached on the grounds of bias or interest. Consequently, the Court reasoned that the nondisclosure caused defense counsel not to pursue that line of cross-examination. *See Bagley*, 473 U.S. at 683, 105 S.Ct. at 3384. However, because it also was possible that the defendant would have been convicted even if the information had been disclosed, the Court remanded the case for a determination of whether the nondisclosure involved "material" evidence under the *Brady* standard. *Bagley*, 473 U.S. at 684, 105 S.Ct. at 3384–85.

The Court's decisions in both *Giglio* and *Bagley* are consistent with the tenet on which the *Brady* doctrine is based, that it is fundamentally unfair for the government to achieve a conviction through the concealment of evidence which undermines the

strength of the government's case against the defendant.

Neither case, however, gives the defense a general right to pre-trial discovery of evidence impeaching defense witnesses, where the prosecution denies that any such material is exculpatory and material under *Brady.*

If impeachment evidence is within the ambit of the Jencks Act, then the express provisions of the Jencks Act control discovery of that kind of evidence. The clear and consistent rule of this circuit is that the intent of Congress expressed in the Act must be adhered to and, thus, the government may not be compelled to disclose Jencks Act material before trial. *See United States v. Algie,* 667 F.2d 569, 571 (6th Cir.1982); *United States v. Carter,* 621 F.2d 238, 240 (6th Cir.1980). Accordingly, neither *Giglio* nor *Bagley* alter the statutory mandate that any "statement"[8] in the government's possession related to the subject matter of a government witness's testimony shall not "be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a).

In the past, we have noted that the Act was designed to prevent defendants from engaging in "blind fishing expeditions" through the government's files, *see, e.g., United States v. Pope,* 574 F.2d 320, 324 (6th Cir.1978), but at the same time, to assure defendants of their Sixth Amend-

ment right to confront their accusers by compelling the government to produce statements useful for impeachment of government witnesses. *United States v. Carter,* 613 F.2d 256 (10th Cir.1979). The Act accommodates both of these concerns by protecting the government's interests before trial and by protecting the defendant's rights at trial, since under the Act the impeachment material is disclosed in time to be used by the defense at trial.

We have found only one federal appellate court which has discussed whether material arguably exempted from pre-trial disclosure by the Jencks Act yet also arguably exculpatory material under the *Brady* doctrine must be disclosed before trial. The Third Circuit stated in *United States v. Higgs,* 713 F.2d 39 (3rd Cir.1983), and also in *United States v. Starusko,* 729 F.2d 256 (3rd Cir.1984), that it believes the *Brady* doctrine is not violated if *Brady* material is disclosed in time for its "effective" use at trial. *See Starusko,* 729 F.2d at 262; *Higgs,* 713 F.2d at 44.

We agree with this reasoning. Preserving the defendant's ability to defend himself effectively at trial is the underlying purpose of the criminal discovery rules. Therefore, so long as the defendant is given impeachment material, even exculpatory impeachment material, in time for use at trial, we fail to see how the Constitution is violated.[9] Any prejudice the defendant

---

**8.** The Jencks Act defines "statement" as
(1) a written statement made by said witness and signed or otherwise adopted or apporved by him;
(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.
18 U.S.C. § 3500(e).

**9.** In *Starusko,* however, the Third Circuit did indicate that in its view, there may be special circumstances when the *Brady* doctrine may require the disclosure of Jencks Act material before trial. In the Third Circuit's view, the situation could arise when the Jencks Act material truly is exculpatory of the charge against

the defendant. *See Starusko,* 729 F.2d at 262–65. The court implied however, that the *Brady* doctrine may require pre-trial disclosure in such a situation because of the due process foundation of the doctrine, that is, that it is fundamentally unfair of the prosecution to withhold from the defendant until trial material which seemingly does prove innocence and therefore, which could obviate the need for a trial altogether. The Third Circuit noted that a prosecutor who withholds such material most likely violates professional ethical canons. However, the court did not state that it was establishing the rule that if exculpatory material is disclosed in time for use at trial, but that the material could have been disclosed earlier, a violation of constitutional law has occurred. Given the court's explicit holding that disclosure in time for effective use at trial is all that the *Brady* doctrine requires, we do not read the *Starusko* decision as undermining the conclusion we have reached in this case.

may suffer as a result of disclosure of the impeachment evidence during trial can be eliminated by the trial court ordering a recess in the proceedings in order to allow the defendant time to examine the material and decide how to use it.

Accordingly, the district court overstepped its authority when it ordered the government to disclose impeachment evidence before trial, even though the court later clarified that it was ordering the disclosure only of impeachment evidence "which tends to negate guilt." We have examined the record with great care, particularly the transcript of the September hearing on the government's motion for reconsideration, in order to discern exactly what the district court meant when it said that only evidence "which tends to negate guilt" is to be disclosed. Unfortunately, we have not been able to discover precisely how broad or how narrow the scope of the district court's order is. At times during the September hearing, the court indicated that the scope of its order is indeed, as broad as the government contends that it is, in that the court appears to have construed the *Brady* doctrine as requiring the disclosure of any evidence which relates to a potential defense, even if that evidence is harmful to the defense.[10] At other times during the proceeding, the court indicated that the scope of its discovery order actually is quite confined and merely reiterates what the government concedes is its general duty to disclose material which supports the defendants' claims of innocence.[11]

However, regardless of which construction we give the district court's order, we cannot uphold it. The broad construction of the order, that any impeachment evidence which is at all related to the defense's case is to be disclosed before trial, clearly is not supported by any decision of this court or of any other court. The narrow construction of the order may seem harmless. Under that construction, the government need disclose only traditional *Brady* material. Even so, the order cannot stand because of the court's accompanying threat to impose sanctions at trial against the government if it does not disclose the *Brady* material before trial. Here, the government has represented that it will comply with all of its *Brady* obligations in time for effective use of the *Brady* material at trial. The *Brady* doctrine did not create a constitutional right of pre-trial discovery in a criminal proceeding. *Weatherford v. Bursey*, 429 U.S. at 559, 97 S.Ct. at 845. Thus, the district court cannot threaten the government with being unable to put on evidence at trial when the law does not require the pre-trial disclosure the court has tried to compel.

Our decision is supported not only by the previously discussed decisions of the Supreme Court construing the *Brady* doctrine, but also by the absence of any basis for the district court's order in Rule 16 of the Federal Rules of Criminal Procedure. Rule 16 requires the government to disclose to the defense before trial only specific categories of evidence. These categories include prior statements of the defendant,

---

**10.** For example, at one point during the proceedings the court stated,

"I take the position whether it is Jencks or not, if it has any tendency to negate guilt, it should be turned over now."

At another point during the hearing the following exchange took place:

THE COURT So your position is those inconsistent statements [of Agent Friedrick] should not be turned over?

MR. JIGGER: [For the Government]: That's right your Honor, because they are not helpful to the defense, and they do not come within the ambit of Brady and Bagley.

THE COURT: That's what Bagley is saying, it is saying it is a very close question sometimes, and my position is, if it is a close question, the

Government is taking a big chance of not turning it over.

**11.** At another time during the proceeding the following exchange took place:

MR. JIGGER: Furthermore, your Honor, with respect to material that is—that would be utilized to impeach the defense, the Government suggests that if it is unfavorable to the defense it clearly does not come within the ambit of Brady, Bagley or any of those cases.

THE COURT: And I would say to you if it tends to negate guilt, it does.

MR. JIGGER: But it can't, your Honor.

THE COURT: I don't know. If it can't, then you are not violating my order so far as I am concerned.

the defendant's prior criminal record, documents, photographs, or tangible objects, which are within the custody or control of the government and which are material to the defense or intended for use by the government in its case-in-chief at trial or which were obtained from or belong to the defendant, and the results of any mental or physical examinations performed on the defendant which are material to the defense or which are intended for use by the government as evidence in its case-in-chief at trial. Rule 16 expressly exempts impeachment material subject to the Jencks Act from disclosure under its provisions. Fed.R.Crim.P. 16(a)(2). More importantly, the discovery afforded by Rule 16 is limited to the evidence referred to in its express provisions. The rule provides no authority for compelling the pre-trial disclosure of *Brady* material, *see United States v. Moore*, 439 F.2d 1107 (6th Cir.1971), or of any other evidence not specifically mentioned by the rule. *See United States v. Roberts*, 811 F.2d 257, 258–59 (4th Cir.1987) (*en banc*) (Rule 16 does not require discovery of coconspirator's statement); *accord United States v. Orr*, 825 F.2d 1537, 1541 (11th Cir.1987); *United States v. Hoffman*, 794 F.2d 1429, 1432 (9th Cir. 1986) (Rule 16 does not require disclosure of the defendant's voluntary statements or of statements made to persons the defendant does not know are government agents); *United States v. Viserto*, 596 F.2d 531, 538 (2d Cir.1979) (Rule 16 does not require disclosure of the defendant's statements inadvertently overheard and memorialized in notes taken by a witness).

 We also find support for our decision in the fact that providing the defense with such a broad right of pre-trial discovery would vitiate an important function of the Jencks Act, the protection of potential government witnesses from threats of harm or other intimidation before the witnesses testify at trial. *See, e.g., Roberts*, 811 F.2d at 259. Clearly, the need to protect witnesses exists whether the witnesses are part of the government's case-in-chief or part of its potential evidence to rebut a

possible defense. Accordingly, we conclude that the government cannot be compelled to disclose impeachment material which would be covered by the Jencks Act relating to any potential government witness, whether it be a witness in the case-in-chief or a rebuttal witness. Further, the government need not disclose impeaching material in its possession relating to any potential defense witness where that impeaching material does not meet the *Brady* test of being material *and* exculpatory.

The following hypothetical illustrates why we conclude that this rule is necessary. A defendant may be prepared to produce two witnesses who would swear falsely that they were with the defendant at the time he is charged with committing a crime. The government has knowledge of three people who can swear that they were with one of the defendant's alibi witnesses. The government's knowledge of these people, and any statements it may possess from them, are "impeachment evidence" and thus could, in the view of the court below, tend "to negate guilt" because the government's evidence affects the defense's alibi. However, if the government were required to disclose material concerning these potential impeachment witnesses before trial, the defense possibly could intimidate the three witnesses. The defense also would secure the tactical advantage of knowing which of its potential witnesses is least subject to impeachment.

The error in the district court's reasoning in this case is that it viewed all impeachment evidence that in any way relates to the defendants' authorization defense as "exculpatory" because it relates to their claim of innocence and, therefore, as *Brady* material that must be disclosed before trial. Its discovery order compels the pre-trial disclosure of material that falls within the scope of either the *Brady* doctrine or of the Jencks Act, both of which only require disclosure in time for effective use at trial, as well as the disclosure of impeachment evidence which lies outside the scope of these criminal discovery mechanisms and of Rule 16.[12]

12. Although a trial court may have some inherent power to enter specific orders compelling

The court already has entered a general discovery order formally requiring the government to comply with the *Brady* rule. The government remains under its constitutional duty to provide the defense with exculpatory material in its possession and will have to face the consequences if it fails to comply with this duty. The decisions which have construed the *Brady* doctrine make it absolutely clear that the remedy for a *Brady* violation is a new trial and that the remedy is available to a defendant only after a first trial has ended in a conviction and only after a defendant shows that there is a reasonable probability that had the *Brady* evidence been disclosed in time for use at trial, the first trial would not have resulted in a conviction. We find no support in any decision construing the *Brady* doctrine for the proposition that a trial judge can threaten to refuse to let a government witness testify in order to sanction noncompliance with the *Brady* doctrine which comes to light before or during trial.

The district court's discovery order to disclose "any and all impeachment evidence" is based on too broad a view of what constitutes "evidence favorable to the accused and material to guilt or punishment." In essence, the district court concluded, on the bases of *Bagley* and of *Giglio*, that the defense has a constitutional right to know the tactical strengths and weaknesses of the government's case against it. The Supreme Court has never held that the Constitution creates such a right and we do not believe that it exists. Accordingly, the district court's discovery order is VACATED and the case is REMANDED for further proceedings.

---

the disclosure of specific evidence when justice requires it, the court may not disregard the Jencks Act mandate. *See Napue,* 834 F.2d at 1318. However, in most criminal prosecutions, the *Brady* rule, Rule 16 and the Jencks Act, exhaust the universe of discovery to which the defendant is entitled. *See Napue,* 834 F.2d at 1316–17; *United States v. Bouye,* 688 F.2d 471, 473 (7th Cir.1982).