870 F.2d 658
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Robert MOSER (88-5846); Bufford Dale Fair (88-5888),
Defendants- Appellants.
 Nos. 88-5846, 88-5888.
 United States Court of Appeals, Sixth Circuit.
 March 20, 1989.
 
 Before RALPH B. GUY Jr., and ALAN E. NORRIS, Circuit Judges, and ROBERT HOLMES BELL, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants, Thomas Robert Moser and Bufford Dale Fair, appeal their convictions of drug-related offenses on several grounds. Both argue that the Sentencing Guidelines are unconstitutional. Fair argues that exculpatory information was improperly withheld and that the district court erred in admitting statements of his alleged coconspirator, and Moser argues specific performance of a plea agreement should be granted.
 
 
 2
 Defendants were indicted on March 16, 1988, in an eight-count indictment charging conspiracy to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. Sec. 846, and distribution of cocaine in violation of 21 U.S.C. Secs. 841(a)(1), (b)(1)(C), and 18 U.S.C. Secs. 2(a), (b). The indictment also charges defendants with using and carrying firearms during and in relation to drug trafficking crimes in violation of 18 U.S.C. Secs. 924(c) and (2)(a), (b).
 
 
 3
 According to the government's evidence, Edward Probst, an undercover narcotics consultant employed by Professional Law Enforcement, Inc. of Dayton, Ohio, was assigned to do undercover work at a Whirlpool Corporation plant in Danville, Kentucky. Probst had several conversations with Moser between January 1, 1988 and March 10, 1988 concerning the purchase of drugs, and a number of buys were arranged.
 
 
 4
 The first transaction took place on January 7, 1988. Probst and James Dailey, an undercover state detective, were taken by Moser to Fair's residence. Moser was given $900 by Dailey for the purchase of one-half ounce of cocaine, and was dropped off to walk down to the residence and arrange the purchase. After allowing Fair time to procure the cocaine, the three returned a short time later and Moser obtained a package from Fair, which he delivered to Dailey.
 
 
 5
 The same scenario took place on January 16, 1988, when Dailey gave Moser $3,600 to purchase two ounces of cocaine.
 
 
 6
 The third and final transaction took place on March 10, 1988. Dailey and Probst, as well as Dave Mirus, another undercover state detective, accompanied Moser to the Fair residence. Fair gave the men instructions to meet him later at a roadside rest a short distance from his home. When Fair appeared, Moser walked over to Fair's vehicle, obtained a package, and returned to the agents' vehicle. Moser and Fair were then arrested. Fair was found to be carrying a semi-automatic handgun, and a revolver was found on the floorboard of Fair's vehicle.
 
 
 7
 After a jury trial, Moser and Fair were convicted of all three offenses. Prior to sentencing, both filed a motion to declare the Sentencing Guidelines promulgated by the United States Sentencing Commission unconstitutional. The district court denied the motion and defendants were sentenced.
 
 
 8
 On appeal, Fair contends that the prosecution failed to discharge its duty to disclose exculpatory information consisting of information of Moser's other drug trafficking activities that was within its possession, and that the trial court erred in admitting out-of-court statements made by his alleged coconspirator, Moser, under the coconspirator exception to the hearsay rule. Moser contends that the government should be bound by the terms of a plea agreement that was assertedly reached during plea negotiations between the prosecutor and both defendants. Both challenge the constitutionality of the Sentencing Guidelines. We will address these issues seriatim.
 
 
 9
 Fair argues that the prosecution's failure to disclose to him exculpatory information within its possession constituted a violation of due process. Brady v. Maryland, 373 U.S. 83 (1963). Although Fair never identifies by name the specific information to which he is entitled, it is clear that Fair directs this court's attention to information of Moser's involvement in drug trafficking aside from his transactions with Fair contained in a pre-sentence investigation report. The information was furnished to the probation office by Probst, who gleaned it from a daily log in his possession. Fair learned of the log during cross-examination of Probst, and Fair was granted a recess by the court to review the material. It is Fair's theory that the "tenuous connection" between Fair and Moser would have been broken if he had received this information, because information of Moser's involvement in drug trafficking would have supported his claim that Moser acted alone in trafficking these drugs, and only used Fair's name and reputation to disguise his own role in the offenses. Fair therefore contends that this information is "exculpatory."
 
 
 10
 Several flaws exist in Fair's claim of a Brady violation. First, due process requires only that disclosure of exculpatory material be made in sufficient time to permit the defendant to make effective use of that material at trial. United States v. Presser, 844 F.2d 1275, 1284 (6th Cir.1988). The prosecutor will fulfill his constitutional obligation by disclosure at trial, unless the defendant can establish that presentation of his defense was so prejudiced that he was prevented from receiving his constitutionally guaranteed fair trial. Id. at 1282. Here, the log book containing the supposed exculpatory information was disclosed at trial, and both defense counsel were given the opportunity to review the material during a recess. Thus, the withheld evidence was "discovered in time for full and adequate correction." United States v. Enright, 579 F.2d 980, 989 (6th Cir.1978). In addition, "Brady does not apply to evidence not in the prosecutor's possession. The purpose of Brady and its progeny is not to require the prosecutor to search out exculpatory evidence but rather to divulge whatever exculpatory evidence he already has." United States v. Bibby, 752 F.2d 1116, 1125 (6th Cir.1985), cert. denied, 475 U.S. 1010 (1986) (citations omitted). In this case, the information contained in the log book was gathered by Probst for his own purposes, and was never in the possession of the prosecution. In sum, the prosecution did not violate due process by failing to disclose exculpatory information to Fair.
 
 
 11
 Fair also argues that the district court erred in admitting out-of-court statements of Moser under Fed.R.Evid. 801(d)(2)(E), which provides: "A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Under Fed.R.Evid. 104(a), questions concerning the admissibility of evidence are determined by the court. Relying upon Bourjaily v. United States, 97 L.Ed.2d 144 (1987), Fair contends that the district court erred in determining that the prosecution had met the standard of admissibility, which requires a showing (1) that a conspiracy existed, and (2) that the statement was made "during the course and in furtherance of the conspiracy." Fair makes two specific arguments.
 
 
 12
 First, Fair argues that the district court relied solely upon Moser's hearsay statements in determining that a conspiracy had been shown by a preponderance of the evidence. Bourjaily held that a court may properly consider the out-of-court statements sought to be admitted in making the determination of admissibility under Fed.R.Evid. 801(d)(2)(E). Id. at 156. Because these statements were not the only evidence of the conspiracy which were present in Bourjaily, the Court found it unnecessary to address whether a court could rely solely upon the uncorroborated statements of a coconspirator to determine that a conspiracy had been established by a preponderance of the evidence. Id. Likewise, we find it unnecessary to address that question in the present case. Although Fair claims that the sole evidence of a conspiracy was the out-of-court statements of Moser, it is obvious that independent evidence existed to corroborate the contested statements. Clearly, evidence of Moser's pick-ups of cocaine at Fair's residence, and of the transaction that took place at the roadside rest, are sufficient to corroborate the statements.
 
 
 13
 Second, Fair seems to attack, as unsupported, the district court's evidentiary determination that the admissibility standard had been met. Fair attempts to distinguish the facts in this case from those in Bourjaily, arguing that the strong evidence corroborating the coconspirator's statement made Bourjaily a "paradigm" case which is in "contrast" to the present case because of a perceived lack of corroboration. Our standard of review of this evidentiary determination not involving any question of relevancy is whether the district court erred in its decision, and if so whether its ruling affected a substantial right of the party. Fed.R.Evid. 103(a). Fair's challenge is directed at the district court's finding that a conspiracy existed. In light of the evidence discussed above, it is clear that the district court did not err in its determination that a conspiracy had been established by a preponderance of the evidence. We therefore uphold the district court's finding, and need not address whether the effect of the ruling was harmless.
 
 
 14
 Turning to Fair's coconspirator, it is Moser's contention that an enforceable plea agreement was reached during plea negotations, and that this court should award specific performance as a remedy for the government's withdrawal from the alleged agreement. According to Moser, he was given the opportunity during plea negotiations to plead guilty to one count of distribution of cocaine with a maximum sentence of twenty-seven months, with the understanding that Fair would also be pleading and he would therefore not have to testify against Fair. Moser accepted the plea offer on these conditions. When it was later discovered that the prosecution had underestimated Fair's sentence under the guidelines, negotiations between Fair and the government eroded. With the "modification" to the plea agreement that Moser would now be required to testify against Fair, Moser felt compelled to stand trial, and he was ultimately sentenced to 111 months.
 
 
 15
 It is not at all clear that it was the prosecutor, and not Moser, who withdrew from the agreement. Assuming for the sake of argument that it was the prosecutor who withdrew, however, it is settled that the prosecutor may withdraw from a plea agreement at any time prior to, but not after, the actual entry of the guilty plea by the defendant or other action by him constituting detrimental reliance upon the agreement. United States v. Kettering, 861 F.2d 675, 677 (11th Cir.1988); W. LaFave & J. Israel, Criminal Procedure Sec. 20.2(e) (1984). Here, Moser makes no claims of a change of position in reliance of the agreement, such as providing information to the government or waiving procedural rights; Moser's only complaint is that he would be better off if the plea agreement had been presented to the court and he had not been required to testify against Fair. Thus, Moser's contentions must be rejected. Although Moser also argues that the prosecutor's withdrawal created suspicions and mistrust between himself and his counsel, in violation of his sixth amendment right to effective assistance of counsel, we note that this very argument was rejected in Mabry v. Johnson, 467 U.S. 504, 510 n. 10 (1984), which held that no constitutional rights are implicated when a prosecutor withdraws from a proposed plea bargain that defendant has accepted before the plea bargain is embodied in the judgment.
 
 
 16
 Finally, the Supreme Court, in Mistretta v. United States, 109 S.Ct. 647 (1989), upheld the constitutionality of the Sentencing Guidelines promulgated by the United States Sentencing Commission in the face of arguments that Congress delegated excessive legislative power to the commission and that the commission's composition violated the principle of separation of powers. Therefore, both defendants' arguments that the Sentencing Guidelines are unconstitutional have been fully addressed by Mistretta and are without merit.
 
 
 17
 For the foregoing reasons, the judgments of the district court are affirmed.
 
 
 
 *
 The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation