980 F.2d 731
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Darrell HOLT, Defendant-Appellant.
 No. 92-5164.
 United States Court of Appeals, Sixth Circuit.
 Nov. 23, 1992.
Rehearing and Rehearing En Banc
Denied Jan. 21, 1993.
 
 Before KEITH, DAVID A. NELSON and RYAN, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is an appeal from a conviction on a federal cocaine charge. The defendant contends that he was unfairly prejudiced by the withholding of certain fingerprint and palm print evidence. Finding the defendant's argument unpersuasive, we shall affirm the conviction.
 
 
 2
 * The Federal Bureau of Investigation was told by an informant that members of the Holt family, of Mud Lick, Kentucky, were engaged in the distribution of cocaine. The informant was prevailed upon to go to the Holts' home in August of 1989 to make a drug purchase. The defendant, James Darrell Holt, and his uncle, Michael Holt, were both away from home when the informant arrived, and no sale took place. While watching the Holts' house during the informant's visit, however, an FBI agent noticed an orange-topped metal ammunition can. The informant had told the FBI earlier that he had given Michael Holt such a can in which to store cocaine.
 
 
 3
 Upon looking inside the ammunition can, the FBI found four packages of cocaine totalling six and one-half pounds in weight. The wrapping materials--including three plastic bags, some tinfoil, and a brown paper bag--were submitted to the Latent Fingerprint Section of the FBI's Identification Division in Washington for fingerprint analysis.
 
 
 4
 The Fingerprint Section sent three reports to the local FBI office in Louisville. The first, dated October 13, 1989, said that no latent prints of value were found on any of the three plastic bags. The second, dated October 16, 1989, said that one latent fingerprint and five latent palm prints had been developed on the paper bag; that the fingerprint had been identified as James Darrell Holt's; and that no palm prints of James Darrell Holt were available in the Fingerprint Section's files, so "major case prints" of James Darrell Holt should be forwarded to Washington.
 
 
 5
 The local FBI office forwarded Holt's palm prints as requested, along with fingerprints and palm prints from eight other suspects. The Fingerprint Section then issued a third report, dated December 18, 1989, stating that one of the latent palm prints found on the paper bag had been identified as that of James Darrell Holt. The report went on to say that "[t]he latent fingerprint and latent impression previously reported in this case are not fingerprints of James Darrell Holt or the other eight persons."
 
 
 6
 Defendant Holt moved for discovery of scientific tests on January 25, 1991. On February 21, 1991, the district court entered an order granting the motion for discovery. The record does not disclose exactly when it was that Mr. Holt was furnished copies of the three fingerprint reports, but his appellate brief acknowledges that the reports "were furnished to the appellant by the United States pursuant to the original discovery order entered February 21, 1991."
 
 
 7
 Mr. Holt subsequently moved for additional discovery, requesting (1) copies of the latent prints referred to in the reports and (2) copies of the prints furnished to the Fingerprint Section for comparison purposes.
 
 
 8
 The district court granted the motion for additional discovery on April 10, 1991. After several postponements, the case was scheduled for trial on October 15, 1991. Mr. Holt's counsel informed the court on that date that he had not yet received the additional discovery. The court postponed the trial again and directed that all discovery issues be resolved forthwith.
 
 
 9
 On October 22, 1991, the prosecution filed a discovery statement advising that the physical evidence submitted to the FBI for fingerprint analysis--including the brown paper bag--had been turned over to counsel for Michael Holt, the co-defendant of James Darrell Holt. Copies of the latent fingerprint and palm prints recovered from the brown paper bag, and copies of the prints submitted for comparison, were not provided.
 
 
 10
 The trial was finally held in November of 1991, at which time the FBI agent who had performed the fingerprint and palm print analysis testified. The government produced a photographic enlargement, made on the eve of trial, showing Holt's palm print from the brown paper bag. Upon objection to the use of this photograph, and after a hearing, the court ruled that the prosecution could use it as a demonstrative item, but could not introduce it as evidence.
 
 II
 
 11
 Because no copies of the prints were furnished to him prior to trial, Mr. Holt contends that the palm print evidence should have been excluded in its entirety. He does not deny that one of the palm prints on the brown paper bag was his, but he maintains that copies of this print and the prints with which it was compared would have been useful in argument to the jury.
 
 
 12
 Rule 16(d)(2), Fed.R.Crim.P., gives district courts broad discretion to impose sanctions against parties who fail to comply with discovery orders. The refusal of the district court to exclude any reference to palm print evidence at the trial of this case is reviewable only for abuse of discretion. United States v. Clark, 957 F.2d 248, 251 (6th Cir.1992).
 
 
 13
 Mr. Holt knew well in advance of trial that his palm print had been matched with the palm print on the brown paper bag. The validity of the match was not in issue.[1] Mr. Holt was well aware of the existence of the four unidentified palm prints on the bag, and he argued to the jury that their existence cast doubt on his guilt. His argument would not have been substantially different if he had been given copies of the prints.
 
 
 14
 The fingerprint expert's testimony concerning the report of December 18, 1989, was somewhat ambiguous. The expert testified that the reference in the third report to a latent fingerprint not the defendant's was not inconsistent with the second report, because the third report was talking about a print analyzed in a separate report not relevant to James Darrell Holt's case. There has been no showing that any such report was suppressed by the government, and the Assistant United States Attorney who argued the appeal made a professional representation that no relevant reports existed aside from the three given to the defendant prior to trial.
 
 
 15
 We are not persuaded that Mr. Holt failed to receive a report that should have been furnished him. Mr. Holt ought to have been given copies of his prints and those of the eight other persons, but under the circumstances presented here we do not believe that the district court committed an abuse of discretion in allowing the fingerprint expert to testify. Neither do we believe that the government's failure to produce copies of the prints resulted in any unfair prejudice.
 
 
 16
 AFFIRMED.
 
 KEITH, Circuit judge, dissenting:
 
 17
 Because I disagree with the majority opinion's analysis, evaluating the utility of the copies of the finger and palm prints, I must dissent.
 
 In its opinion, the majority states:
 
 18
 Mr. Holt knew well in advance of trial that his palm print had been matched with the palm print on the brown bag. The validity of the match was not in issue. Mr. Holt was well aware of the existence of the four unidentified palm prints on the bag, and he argued to the jury that their existence cast doubt on his guilt. His argument would not have been substantially different if he had been given copies of the prints. (emphasis added)
 
 
 19
 The majority's analysis is flawed in a number of respects. The majority states that the validity of the match was not in issue. However, in light of the blatant inconsistences between the various fingerprint reports, it is difficult to understand how this statement can be made. Although Mr. Holt's palm print was identified on the paper bag by the government's fingerprint expert, Mr. Holt was never given the copies of the prints used by the government to determine whether the expert erred in his findings. Moreover, the majority takes great liberty to conclude that the copies of the prints would not have been of any use to defense counsel. It is not the role of this Court to evaluate the usefulness of certain evidence to defense counsel, or even to speculate as to the effectiveness of certain strategies. Instead, we are to determine whether the government did not provide the defense evidence to which the defense was constitutionally entitled.
 
 
 20
 The Supreme Court stated in Brady v. Maryland, 373 U.S. 83 (1963), that the prosecution cannot suppress evidence favorable to an accused when the evidence is material to guilt. In United States v. Presser, we held that Brady requires the government to provide an accused with evidence that is "both favorable ... and material to guilt or punishment." Presser, 844 F.2d 1275, (6th Cir.1988). In Presser, we stated:
 
 
 21
 [A] majority of this Court has agreed, "[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."
 
 
 22
 Presser, 844 F.2d at 1281 quoting Pennsylvania v. Ritchie, 480 U.S. 39 (1987) (citations omitted). Evidence need not be exculpatory in the sense of tending to negate guilt to fall within the requirements of Brady. Id. at 1275. For example, impeachment evidence relating to the credibility of a key government witness is exculpatory under Brady. In Giglio v. United States, the Supreme Court explained that "when the 'reliability of a given witness may well be determinative of guilt or innocence', nondisclosure of evidence affecting credibility falls within this general rule". 405 U.S. 150, 154 (1972).
 
 
 23
 In light of the inconsistencies present in the F.B.I. finger and palm print reports, the copies of the finger and palm prints requested by the defendant could have been of great advantage to the defense. If the appellant had been given access to the missing evidence, he might have used it to illuminate the inconsistencies in the government's evidence against him, which may have created a reasonable doubt as to his guilt. At the very least, the requested evidence could have been used to impeach Agent Hollars, the government's fingerprint expert. Simply put, having the copies of the finger and palm prints may have changed the result of the trial.
 
 
 24
 Furthermore, the government's continued refusal to comply with appellant's specific discovery request raises a question as to the importance of the withheld information. Appellant clearly was not on a "fishing exhibition". Instead, he repeatedly requested discovery of specific information which the government repeatedly refused to provide.
 
 
 25
 Therefore, I would hold that the district court abused its discretion in denying appellant's Brady motion for discovery of the copies of the finger and palm prints. Considering both the inconsistencies in the finger and palm print reports, as well as the government's steadfast refusal to provide the requested documents, under Brady, the court should have granted appellant's motion. Accordingly, the judgment of the district court should be reversed, and the defendant should be granted a new trial.
 
 
 
 [1]
 The following exchange occurred with Mr. Holt's counsel at oral argument:
 JUDGE NELSON: And as I read your brief, you're really not challenging the fact that it was your client's palm print.
 COUNSEL: I'm not challenging that....