**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Delford FORT, Defendant–Appellant.**

No. 01–2002.

United States Court of Appeals,
Sixth Circuit.

Jan. 8, 2002.

Before KEITH, KRUPANSKY, and CLAY, Circuit Judges.

PER CURIAM.

In the single issue under dispute, defendant-appellant Delford Fort ("Fort") challenged the district court's determination that recorded conversations in the government's possession, not released to the defendant during discovery, were neither favorable to Fort nor material to the outcome of the trial and, therefore, did not constitute a *Brady/Giglio* violation ne-

cessitating a new trial. Because Fort has been unable to prove that the evidence was either favorable or material to his defense, we AFFIRM the district court's ruling.

Early in 1999, the Federal Bureau of Investigation ("FBI") received information from the Detroit Police Department ("DPD") that certain officers of the narcotics section of the DPD were stealing money and drugs from premises during the execution of search warrants. In response to this concern, the FBI implemented a 'sting.' It prepared a residence in which it 'stashed' cash, jewelry and drugs in one of the bedrooms. FBI agents then secreted video cameras in the bedroom and audio recorders through other rooms of the house.

On July 8, 1999, the narcotics section of the DPD, under the command of Lt. Arthur McNamara, executed a search warrant on this faux 'stash house.' DPD officers in this section included defendant Fort and Derrick Carpenay. During the search, Fort and Carpenay concentrated on searching the bedroom under video surveillance. Fort found $7,000 in a coat pocket which he surreptitiously handed to Carpenay while Carpenay found $3,000 in cash, a packet of cocaine and jewelry which he placed inside his police jumpsuit. Neither Fort nor Carpenay disclosed finding these items immediately upon discovery, as they were required to do pursuant to DPD rules. In addition, at the conclusion of the search, when the team assembled in the kitchen to tabulate the search inventory, both Fort and Carpenay verbally denied finding any reportable evidence. After returning to the police precinct, Fort and Carpenay were arrested and the cash and jewelry confiscated.

On July 15, 1999, a grand jury indicted Fort and Carpenay for the theft of government property and conspiracy to steal government property in violation of 18 U.S.C. §§ 641 and 371. On October 27, 1999, Carpenay entered into a plea agreement, in satisfaction of which he related various incidents of illegal activity with Fort. These incidents involved stealing money and drugs during the execution of search warrants and consigning the stolen drugs to local dealers to sell on their behalf. Investigators corroborated these incidents by reviewing DPD search warrant records and interviewing owners and residents where Carpenay indicated the thefts had occurred.

On November 1, 1999, after Carpenay entered into the plea agreement, the grand jury returned two additional criminal counts charging Fort with conspiracy to steal DPD property valued at more than $5,000 that was under his care, custody and control, and conspiracy to possess with intent to distribute controlled substances, in violation of 18 U.S.C. §§ 666(a)(1)(A) and 371, and 21 U.S.C. §§ 841 and 846. A jury trial returned a verdict on May 25, 2000, convicting Fort on all counts but conspiracy to posses with intent to distribute controlled substances.

After the verdict, but prior to sentencing, Fort learned that the government had failed to provide the defense with audio tapes in which Carpenay, during a conversation with a drug dealer, Warren Brown, referred to Lt. McNamara as "dirty" and "criminal." These tapes were seized during a separate task force search of Brown's residence in September 1999. The FBI case agent assigned to the Fort investigation received these tapes because they disclosed threats to potential witnesses in the Fort case. On the tapes, Carpenay referred to McNamara by his street name, 'coyote,' and uttered McNamara's name only once. The case agent did not know that 'coyote' was McNamara's *nom de guerre* until the post-trial proceedings.

Fort filed a motion for an evidentiary hearing on October 5, 2000, seeking a new trial based on an alleged violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Following the evidentiary hearing, the district court concluded that the withheld material did not run afoul of the strictures of *Brady/Giglio* and, thus, a new trial was not warranted.

On June 12, 2001, Fort received a 20 month sentence from the district court to be followed by a three year period of supervised release. Defendant was also ordered to pay $34,900 in restitution. Fort filed a timely notice of appeal.

Allegations of violations of *Brady* present mixed questions of law and fact which the court reviews *de novo. Carter v. Bell,* 218 F.3d 581, 591 (6th Cir.2000).

■ Fort has challenged the district court's determination that the tapes did not constitute *Brady/Giglio* material. Specifically, Fort has contended that the government violated its obligation to disclose evidence favorable to the defense by not divulging that (1) in taped conversations with a drug dealer, Carpenay, referring to Lt. McNamara as 'coyote,' had declared him "vile," "evil," and a "thief"; and (2) Carpenay had referred to McNamara as "dirty" during his debriefing by FBI agents. Carpenay admitted the falsity of these accusations during defendant's evidentiary hearing. Fort has now contended that, by showing Carpenay had the "audacity to lie to [an] FBI agent" about McNamara, the tapes had material of exculpatory value regarding Carpenay's testimony against Fort.

Pursuant to the rule enunciated in *Brady,* the government must relinquish evidence "in its possession that is both favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). This disclosure obligation encompasses evidence that could be used to impeach the credibility of a witness. *Giglio v. United States,* 405 U.S. at 154–155, 92 S.Ct. 763. However, "not every failure to disclose evidence favorable to the defense requires a reversal of a conviction." *United States v. Veksler,* 62 F.3d 544, 550 (3d Cir.1995)

As this court has noted, the *Brady* doctrine, distilled to its essence, "is the rule of law that the Due Process Clause is violated ... by withholding evidence 'so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce.'" *U.S. v. Presser,* 844 F.2d 1275, 1281 (6th Cir.1988) (*quoting United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). Establishing a violation of *Brady* requires that appellant show: (1) "the prosecutor suppressed evidence; (2) that such evidence was favorable to the defense; and (3) that the suppressed evidence was material." *Carter v. Bell,* 218 F.3d 581, 601 (6th Cir.2000).

With regard to the first prong of the *Brady* inquiry, the government proffered two arguments against suppression. The government contended that its failure to release the audio tapes was inadvertent, because the agent reviewing the tapes had focused his attention on determining if the tapes included threats to witnesses. Additionally, the FBI argued that Carpenay's comments characterizing McNamara as "dirty" were not supported by facts, which removed it from the ambit of *Brady.*

In the instant case, the disputed evidence was not favorable to Fort's defense, as it must be, to succeed under the second mandate of *Brady.* Contrary to the defendant's charge, Carpenay's statements on tape and to the FBI do not conflict with his trial testimony regarding McNamara.

Indeed, when asked at trial whether other officers were themselves stealing during the execution of search warrants, Carpenay testified, consistent with his pretrial statements, that as far as he knew, "everybody helped themselves." *Additionally, Carpenay admitted that his statements regarding McNamara had no factual basis.* Finally, the challenged statements would have accomplished little in further eroding Carpenay's already meager credibility. *At trial, Carpenay admitted that he had been stealing items during the execution of search warrants for a number of years and that he had lied under oath on numerous occasions.*

■ Fort has also failed to prove the materiality of the challenged statements under the third requirement of *Brady.* As this circuit has noted, evidence is material under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of a proceeding would have been different." *United States v. Presser,* 844 F.2d 1275, 1281 (6th Cir.1988). For evidence to be regarded as material it must "create a reasonable doubt that did not otherwise exist" or introduce a reasonable probability "sufficient to undermine confidence in the outcome," *United States v. Agurs,* 427 U.S. at 112, 96 S.Ct. 2392; *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

Defendant has suggested that access during trial to Carpenay's fabrications regarding McNamara would have enabled the defense to undermine Carpenay's credibility. As already noted, this position is untenable. At trial, defendant's counsel used Carpenay's admissions of theft, drug dealing and perjured testimony to thoroughly impeach the witnesses' credibility. Carpenay further testified to lying under oath hundreds of times in Detroit drug cases. In light of the ample impeachment evidence produced, Carpenay's unsubstantiated comments about McNamara, uttered in a fit of pique, were not "sufficient to undermine confidence in the outcome." Moreover, Carpenay's trial testimony was supported and corroborated through independent investigation, while his undisclosed statements regarding McNamara's culpability remained mere self-serving accusations.

Accordingly, petitioner's motion for a new trial was properly overruled by the trial court and its judgment is affirmed.