James M. ALLEN, Petitioner–Appellee,

v.

UNITED STATES of America, Respondent–Appellant.

No. 88–5250.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 21, 1988.

Decided Feb. 16, 1989.

Tyree B. Harris (argued), Harris & Harris, Nashville, Tenn., for James M. Allen, petitioner-appellee.

Joe B. Brown, U.S. Atty., James C. Thomason, III, Asst. U.S. Atty. (argued), Office of the U.S. Attorney, Nashville, Tenn., for the U.S., respondent-appellant.

Before JONES and NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.

ALAN E. NORRIS, Circuit Judge.

James M. Allen was convicted of mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 1341 and 371. Those convictions were affirmed by an en banc panel of this court in *United States v. Blanton*, 719 F.2d 815 (6th Cir.1983), *cert. denied*, 465 U.S. 1099, 104 S.Ct. 1592, 80 L.Ed.2d 125 (1984), prior to the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). He was sentenced to two years' imprisonment and fined $8,000. Relying upon *McNally*, Allen sought from the district court a writ of error *coram nobis* to set aside those convictions, and restitution of the fine he had paid. It is from the granting of that relief by the district court that the government appeals.

## I

Along with the former Governor of Tennessee, Leonard Ray Blanton, and Clyde Edward Hood, a special assistant to Blanton, Allen was charged in a twelve-count indictment with eight counts of mail fraud (18 U.S.C. § 1341), and one count of conspiracy (18 U.S.C. § 371). The conduct undergirding the charges was the use by defendants of their positions to obtain preferential treatment for friends of Blanton concerning the operation of state licensed liquor stores. The scheme in which Allen was said to be involved would have violated state laws against public officials having an interest in a liquor store, against one person having an interest in more than one store within a municipality, and against public officials receiving bribes. He also was said to be involved in subverting the operation of the state's Alcoholic Beverage Commission so that liquor licenses could be issued to friends of the Blanton administration.

## II

The mail fraud statute seeks to punish persons who, having devised a scheme to obtain money or property by fraud, use the mails to accomplish the scheme.[1] In *McNally*, the Supreme Court construed the statute as reaching only schemes designed to defraud of money or property. In that case, former Kentucky officials were involved in a scheme to divert, from the insurance agency actually earning them to agencies designated by the defendants, commissions paid by the state for workers' compensation policies. The indictment "alleged that [defendants] had devised a scheme (1) to defraud the citizens and government of Kentucky of their right to have the Commonwealth's affairs conducted honestly, and (2) to obtain, directly and indirectly, money and other things of value

by means of false pretenses and concealment of material facts." *McNally*, 483 U.S. at ——, 107 S.Ct. at 2878, 97 L.Ed.2d at 298. The Court analyzed the legislative history of the mail fraud statute, as well as cases interpreting it, and concluded that Congress intended the statute to reach only schemes designed to defraud of money or property, and not "the intangible right of the citizenry to good government." *Id.* at ——, 107 S.Ct. at 2881, 97 L.Ed.2d at 300–02. The defendants' mail fraud convictions were reversed because "the jury was not required to find that the Commonwealth itself was defrauded of any money or property." *Id.* at ——, 107 S.Ct. at 2880–81, 97 L.Ed.2d at 302.

Prior to *McNally*, it was well-settled, as a matter of case law from the federal circuits, that the mail fraud statute reached schemes designed "to defraud citizens of their *intangible* rights to honest and impartial government." *United States v. Asher*, 854 F.2d 1483, 1488 n. 10 (3d Cir. 1988) (collecting cases). *McNally*, however, specifically proscribed mail fraud prosecutions under an intangible rights theory. *McNally*, 483 U.S. at ——, 107 S.Ct. at 2881, 97 L.Ed.2d at 302.

Shortly after *McNally*, the Supreme Court explained that while the mail fraud statute proscribed prosecutions under the intangible rights theory, property protected by the statute could be either tangible or intangible in nature. *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). In *Carpenter*, the Court upheld the mail fraud conviction of a Wall Street Journal reporter on the theory that his acquisition of the Journal's confidential information deprived it of an intangible property right. The Court reasoned that the intangible nature of an interest "does not make it any less 'property' protected by the mail and wire fraud stat-

---

**1.** The mail fraud statute, 18 U.S.C. § 1341, provides in relevant part:

   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting so to

do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.

utes." *Carpenter*, at ——, 108 S.Ct. at 320, 98 L.Ed.2d at 283. "*Carpenter* stands for the narrow principle that *McNally* was not intended to exclude from the purview of section 1341 fraudulent schemes and artifices merely because the property interest involved was normally defined as an intangible one." *United States v. Baldinger*, 838 F.2d 176, 179 (6th Cir.1988).

One result of *McNally* has been a flood of litigation seeking to set aside mail fraud convictions. *See Asher*, 854 F.2d at 1490 (collecting cases). Convictions have been upheld where the indictment, proofs, and the jury instructions require a deprivation of something of economic value, as well as of intangible rights. *Asher*, 854 F.2d at 1494. Even then, courts may not affirm convictions if the defendant has been prejudiced by an improper jury instruction. *United States v. Jacobs*, 475 F.2d 270, 282–84 (2d Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 116, 131, 38 L.Ed.2d 53 (1973); *see also United States v. Ochs*, 842 F.2d 515, 523 (1st Cir.1988) (collecting cases). In the present case, the district judge concluded that neither the indictment nor the jury instructions charged a crime after *McNally*, and therefore reversed Allen's convictions.

### III

■■■ Our starting point is to determine whether the indictment charged a crime after *McNally*. In order for an indictment to be sufficient, it must contain the elements of the offense charged and fairly inform a defendant of the charges against which he must defend. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *see also Baldinger*, 838 F.2d at 181. The indictment must also enable the defendant to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense. *Russell v. United States*, 369 U.S. 749, 764, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962). Courts utilize a common sense construction in determining whether an indictment sufficiently informs a defendant of an offense. Project, *Seventeenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1986–1987*, 76 Geo. L.J. 521, 761 (1988) (collecting cases).

The government charged in the indictment that Blanton, Hood, and Allen conspired to devise a scheme to defraud the citizens of Tennessee "of their right to conscientious, loyal, faithful, disinterested and unbiased services" of Blanton and Hood. It also charged the defendants with defrauding the citizenry of their right to have the business of Tennessee "conducted honestly, impartially, free from deceit, craft, trickery, corruption, fraud, undue influence, dishonesty, conflict of interest, [and] bribery." In furtherance of this scheme, the indictment alleges that the defendants used the United States mails.

The government seeks to save its convictions by arguing that, although the indictment fails to specifically refer to a tangible or intangible property right of which the state was defrauded, nevertheless, when one considers the language of the indictment in its entirety, Allen was given sufficient notice that the government was seeking to hold him accountable for a scheme to defraud the state of an intangible property right. We disagree.

The government contends that the language of the indictment spells out four instances in which the defendants' conduct injured the state of Tennessee: Less than all available licenses were issued in an attempt to curtail competition; the state was deprived of license fees and tax revenue; licenses were issued to persons who did not open a retail store, depriving the state of tax revenue; and liquor licenses were issued in violation of state law.

Much of the language the government relies upon is found in the portion of the indictment detailing the "overt acts" element of the crime of conspiracy. There is, of course, authority for the proposition that the overt acts portion of an indictment may be considered in judging the sufficiency of the language of an indictment. *See, e.g., United States v. Kilpatrick*, 821 F.2d 1456, 1464 (10th Cir.1987), *aff'd on other grounds sub nom. Bank of Nova Scotia v. United States*, —— U.S. ——, 108 S.Ct.

**972**

2369, 101 L.Ed.2d 228 (1988). However, we are not confronted with a motion to dismiss an indictment, the overruling of which would have the effect of placing a defendant on notice of precisely the charges that are being lodged against him. Instead, we are asked to engage in a retroactive parsing of the language of an indictment after a defendant has been tried in response to it. Accordingly, we must examine the indictment in the context of the charge upon which Allen actually was tried in response to that indictment. Viewed from that perspective, then, the issue is not what Allen might have been charged with when one examines his conduct in retrospect and recharacterizes it in light of *McNally*, but what charges actually were lodged against him, tried, and submitted to the jury.

 Here, a common sense reading of the indictment, and an examination of the record, reveals that Allen was charged and tried under the proscribed "intangible rights" theory. The trial judge, in that part of his instructions to the jury defining the essential element of a scheme to defraud, characterized the indictment and the government's theory as charging Allen with participating in a scheme to violate Tennessee statutes prohibiting public officials from having an interest in liquor stores and forbidding persons from having an interest in more than one liquor store within a single municipality, and in a scheme to subvert the operation of the Alcoholic Beverage Commission so that liquor licenses could be issued to friends of the Blanton administration rather than pursuant to established procedures of the commission. The jury was advised that schemes or plans to violate those liquor laws and to so operate the commission, would be schemes to defraud within the meaning of the mail fraud statute.

Manifestly, the jury was instructed that it should convict Allen if it found that he was involved in a scheme to violate state laws or to subvert the liquor commission, as opposed to a scheme to defraud the state of its property, as now contended by the government. The result was that, under the charge as set out in the indictment and described in the court's instructions, Allen could be convicted without the jury having to find that he schemed to defraud the state of a property right. Accordingly, the indictment and instructions permitted a conviction for conduct not within the reach of the mail fraud statute.

## IV

For the foregoing reasons, the order of the district court reversing Allen's conviction for mail fraud and conspiracy to commit mail fraud is affirmed.