**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Betty SALISBURY, Defendant– Appellant.**

**No. 91–3989.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 13, 1992.

Decided Jan. 15, 1993.

Rehearing and Rehearing En Banc Denied April 5, 1993.

Dale E. Williams, Jr. (argued), Asst. U.S. Atty., Office of the U.S. Attorney, Columbus, OH for plaintiff-appellee.

Max Kravitz (argued), Paul Croushore, Columbus, OH, for defendant-appellant.

Before KENNEDY and JONES, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Defendant Betty Salisbury appeals her conviction and sentence on one count of voting and assisting others in voting more than once in violation of 42 U.S.C.

§ 1973i(e) and 18 U.S.C. § 2. Salisbury and her co-defendant, Judy Scott, were tried by jury in the United States District Court for the Southern District of Ohio, Eastern Division. The jury acquitted Salisbury of four charges of obstructing correspondence in violation of 18 U.S.C. § 2 and vote buying in violation of 42 U.S.C. § 1973i(c) and 18 U.S.C. § 2. A hung jury resulted in the court's dismissal of the remaining charge against Salisbury, that of conspiring to vote more than once with co-defendant Judy Scott in violation of 18 U.S.C. § 371. The government has not appealed the dismissal.

On appeal, defendant Salisbury challenges: 1) the sufficiency of the indictment; 2) the district court's denial of her motion for a bill of particulars; 3) the adequacy of the district court's jury instructions; 4) the district court's admission of evidence and prosecutorial statements of unrelated voting abuse in Pike County; 5) the propriety of the district court's refusal to excuse a juror who purportedly had improper contact with a government witness during the trial and the district court's subsequent refusal to declare a mistrial on this basis; 6) the district court's purportedly improper application of the United States Sentencing Guidelines to this case; and 7) the sufficiency of the evidence sustaining the defendant's conviction.

Upon review, we find compelling reasons to order the reversal and vacation of defendant's conviction.

During the latter part of 1990, the Federal Bureau of Investigation began examining the Pike County electoral process in response to citizens' complaints concerning the administration of absentee ballot voting. The testimony adduced at trial described how defendant Salisbury, a Pike County Republican Party operative and committee chairperson, usually accompanied by co-defendant Judith Scott, went to the homes of county residents to solicit applications for absentee ballot registration. Upon delivery by mail of the ballot packets at the homes, the defendants would immediately appear, ostensibly to assist the voters in filling out the ballots.[1] Trial testimony revealed that the assistance frequently consisted of Salisbury reading aloud to the voter the identification numbers of the Republican candidates she supported, while the voter punched the numbers corresponding to those candidates on the ballot card. Numerous voters "helped" by the defendants told the court that Salisbury never asked any of them whom they wished to vote for and never offered alternative choices to the candidates she personally endorsed. In a few instances, where voters expressed interest in voting for a particular candidate not personally endorsed by Salisbury, Salisbury would disparage the character, motivation and skill of the politician and instead offer those voters only the identification number of the candidate she supported. Upon completing the ballot card, the voter would sign the form and often Salisbury would take the ballot, seal the envelope, and convey it to the Board of Elections.

Salisbury and Scott conducted their activities from April 3, 1990 through election day, May 8, 1990. Though the duo normally read aloud the identification numbers of their endorsed candidates and instructed the voters to punch the corresponding numbers on the ballot cards, in some instances the defendants punched the ballot cards themselves, ostensibly on behalf of the voter. Further, Salisbury frequently prohibited voters from seeing the entire list of candidates enclosed in the absentee voter ballot packets, forcing them to rely on her oral recitation of identification numbers. In at least one instance, Republican Party operative Salisbury drove an absentee voter to the Board of Elections in order to exchange the voter's Democratic Party ballot for a Republican Party ballot. In another instance, Salisbury assisted one voter in obtaining and completing absentee ballots on behalf of the voter's sons, all of whom resided out of state.

---

**1.** The evidence presented at trial disclosed that the defendants, at times, would actually circle a neighborhood by car until they saw the mail carrier deposit an absentee ballot packet at a particular voter's home.

At trial, the prosecution attempted to raise an inference that Salisbury preyed on unsophisticated voters, with little knowledge of the voting process, because Salisbury assisted an eighteen year old first time voter and a ninety-two year old nursing home resident in the sparsely populated and rural Pike County. Salisbury testified in her own defense and denied all the conduct upon which the charges against her were based.

A number of the voters whom Salisbury "helped" were disgruntled by her assistance, which many felt had actually amounted to coercion to vote absentee and to vote for Salisbury's slate of Republican candidates. The letters of these voters to the Board of Elections resulted in some of these contested ballots not being counted and prompted the investigation which led to this case against the co-defendants.

Upon conviction, the court sentenced Salisbury to eighteen months incarceration, a $1,000 fine and two years of supervised release.

In her first two assigned errors, defendant charges that the district court erroneously failed to dismiss count two of the indictment as unconstitutionally vague, and failed to rectify the problem by denying her motion for a bill of particulars. Defendant's third assignment of error avers that the court's jury instructions failed to adequately inform the jury of the nature of the multiple voting charge set forth in count two of the indictment. The following discussion will reveal that these three assigned errors implicitly question whether 42 U.S.C. § 1973i(e) was unconstitutionally vague as applied to Salisbury. We find this implicit constitutional challenge to be well taken.

Defendant first avers that the district court erroneously failed to dismiss count two of the indictment as unconstitutionally vague because it did not set forth the specific occurrences which purportedly constituted the multiple voting crime charged.

FED.R.CRIM.P. 7(c)(1) describes the nature and contents of an indictment:

> The indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the attorney for the government. It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated.

■ FED.R.CRIM.P. 7(c)(1) requires the indictment to set out each element of the statutory violation in order to sufficiently inform the defendant of the offense against which she must defend. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590, *reh'g denied,* 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974); *Allen v. United States,* 867 F.2d 969, 971 (6th Cir.1989). The indictment must also be sufficient to bar any subsequent prosecution for the same offense. *Hamling v. United States,* 418 U.S. at 117, 94 S.Ct. at 2907; *Allen v. United States,* 867 F.2d at 971.

Count two of the indictment states:

> On or about the period April 3, 1990, through May 8, 1990, in the Southern District of Ohio, the defendant, BETTY SALISBURY, did vote and cause others to vote more than once each in the May 8, 1990 primary election, which election was held in part for the purpose of selecting and nominating candidates for the office of Representative to Congress from the Sixth Congressional District of Ohio.
>
> In violation of 42 U.S.C. § 1973i(e) and 18 U.S.C. § 2.

Joint Appendix, p. 12.

■ 18 U.S.C. § 2 permits defendant to be charged as a principal for her commission and encouragement of the commission

of the prohibited activity of voting more than once in an election, as set forth in 42 U.S.C. § 1973i(e).[2] Count two, as set forth above, met the fundamental requirements of notice pleading by reiterating the elements of the proscription as presented in 42 U.S.C. § 1973i(e). *See Hamling v. United States*, 418 U.S. at 117, 94 S.Ct. at 2907; *Allen v. United States*, 867 F.2d at 971. Count two further set forth a specific time period during which defendant purportedly conducted her illegal activities. Where the government clearly accuses a defendant of committing the proscribed act of actually voting multiple ballots in a protected election, the indictment should stand. *United States v. Lewis*, 514 F.Supp. 169, 178 (D.C.Pa.1981) (The court upheld an indictment setting forth a recitation of statutory elements where the proscribed action was, on its face and beyond a doubt, voting more than once). In the instant case, however, the defendant's conduct, as detailed by the government, is not so clearly "voting more than once."

■ Where an indictment sets forth a bare recitation of the statutory language, such indictment may be sustained only if the statute sets forth all the necessary elements fully and clearly, without ambiguity or uncertainty, accompanied by a statement of facts sufficient to inform the accused of the specific conduct which is prohibited. *Hamling v. United States*, 418 U.S. at 117, 94 S.Ct. at 2907; *Russell v. United States*, 369 U.S. 749, 765, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Paulino*, 935 F.2d 739, 750 (6th Cir. 1991), *cert. denied*, ⎯ U.S. ⎯, 112 S.Ct. 883, 116 L.Ed.2d 787 (1992); *United States v. Sullivan*, 919 F.2d 1403, 1411 (10th Cir. 1990); *United States v. Crow*, 824 F.2d

761, 762 (9th Cir.1987). As will be more fully discussed in subsequent pages, 42 U.S.C. § 1973i(e) does not define the phrase "voting more than once" to completely and unambiguously prohibit the conduct exhibited in the instant case. In fact, the statute does not even define "voting more than once" except to exclude from its ambit the situation where a voter casts an additional ballot after having a previous ballot invalidated.

■ The government sought to describe the conduct it deemed multiple voting by reiterating the 42 U.S.C. § 1973i(e) elements against Salisbury in count two of the indictment. The overt acts section of count one detailed the factual basis of the entire indictment. FED.R.CRIM.P. 7(c)(1) permits the incorporation by reference in subsequent counts of an indictment the allegations put forth in the first count. *Allen v. United States*, 867 F.2d at 971; *United States v. Kilpatrick*, 821 F.2d 1456, 1462, 1464 (10th Cir.1987), *aff'd sub. nom.*, *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). Thus, a reviewing court may consider the overt acts portion of one count in judging the sufficiency of an indictment. *Allen v. United States*, 867 F.2d at 971, citing *United States v. Kilpatrick*, 821 F.2d at 1461, 1464.

■ The factual basis of the indictment in the instant case consisted of a litany of actions which purportedly constituted "voting more than once." None of the listed actions, however, clearly exemplifies multiple voting. For instance, the indictment enumerates, in specific detail, the following actions: 1) the co-defendants caused a third party to punch holes in the ballot of an absentee voter without his "active partic-

---

**2.** 42 U.S.C. § 1973i(e) sets forth:

(1) Whoever votes more than once in an election referred to in paragraph (2) shall be fined no more than $10,000 or imprisoned not more than five years, or both.

(2) The prohibition of this subsection applies with respect to any general, special or primary election held solely or in part for the purpose of selecting or electing any candidate for the office of President, Vice President, presidential elector, Member of the United States Senate, Member of the United States House of Representatives, Delegate from the District of Columbia, Guam, or the Virgin Islands, or Resident Commissioner of the Commonwealth of Puerto Rico.

(3) As used in this subsection, the term "votes more than once" does not include the casting of an additional ballot if all prior ballots of that voter were invalidated, nor does it include the voting in two jurisdictions under section 1973aa–1 of the title, to the extent two ballots are not cast for an election to the same candidacy or office.

ipation"; 2) defendant Salisbury "caused" a Democrat to apply for a Republican absentee ballot; 3) defendant Salisbury "voted" the ballots of absentee voters without their permission; 4) defendants, on several occasions, instructed an absentee voter to punch a certain set of holes on his absentee ballot without allowing him to identify the corresponding candidates; and 5) defendant "voted" an absentee ballot on behalf of a person she knew was no longer a resident of Pike County.

The indictment, like the statute, does not set forth a clear and unambiguous definition of the term "vote" or the phrase "voting more than once." It also does not describe which of Salisbury's activities specifically constitutes "voting" or "voting more than once." For example, Salisbury's actions, such as reading candidates' names aloud to an absentee voter while the absentee voter physically punched the holes on the ballot and signed the form, do not seem to comport with our common understanding of what constitutes voting. We note that the indictment does not even clearly allege that Salisbury voted on her own behalf. Thus, we hold that count two of the indictment, even in the context of the entire indictment, fails to adequately notify the defendant of the specific occurrences which constituted the charge against her.

In her second assignment of error, the defendant contends the district court denied her a fair trial by denying her motion for a bill of particulars.

FED.R.CRIM.P. 7(f) states:

> The court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or within ten days after arraignment or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires.

■ A bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes. *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir.1976); *United States*

*v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965). It is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial. *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir.1978), *cert. denied*, 439 U.S. 819, 99 S.Ct. 80, 58 L.Ed.2d 109, *reh'g denied*, 439 U.S. 997, 99 S.Ct. 599, 58 L.Ed.2d 670; *United States v. Lawson*, 688 F.Supp. 314, 315 (S.D.Ohio 1987); *United States v. Jones*, 678 F.Supp. 1302, 1304 (S.D.Ohio 1988). Further, a defendant is not entitled to discover all the overt acts that might be proven at trial. *United States v. Kilrain*, 566 F.2d at 985.

■ The decision to order a bill of particulars is within the sound discretion of the trial court. *United States v. Mahar*, 801 F.2d 1477, 1503 (6th Cir.1986). An abuse of discretion exists only when the reviewing court is firmly convinced that a mistake has been made. *In re Bendectin*, 857 F.2d 290, 307 (6th Cir.1988), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989); *Schrand v. Federal Pacific Elec. Co.*, 851 F.2d 152, 156–157 (6th Cir.1988). To successfully challenge a district court's denial of a motion for a bill of particulars, the defendant must show not only that the court abused its discretion, but that defendant actually suffered surprise or other prejudice at trial. *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir.1991); *United States v. Rosa*, 891 F.2d 1063, 1066–1067 (3rd Cir.1989).

■ A court does not abuse its discretion by denying a bill of particulars in light of a detailed indictment. *See United States v. Mahar*, 801 F.2d at 1503. The problem in the instant case is not that the prosecution failed to set out a sufficiently detailed factual basis to support its charges, but that the statute proscribing multiple voting fails to provide sufficient guidance to notify defendant that her activities were included in its prohibition against multiple voting. On that basis, we held the indictment constitutionally invalid. The additional information provided by a bill of particulars could not have cured the constitutional infirmity of this indictment. Thus, because the failure of 42 U.S.C. § 1973i(e)

to establish that what Salisbury did constituted "voting more than once" could not have been remedied by granting defendant's motion for a bill of particulars, we cannot say the district court abused its discretion by denying the motion. A bill of particulars cannot be used to save an otherwise invalid indictment. *Russell v. United States,* 369 U.S. at 769–770, 82 S.Ct. at 1050; *United States v. Sturman,* 951 F.2d 1466, 1479 (6th Cir.1992), *appeal pending,* 60 U.S.L.W. at 3689.

This court finds the district court did not abuse its discretion by denying defendant's motion for a bill of particulars.

In her third assigned error, defendant challenges the district court's jury instructions on the multiple voting charge as insufficient to inform the jury of the nature of the charge. It is important to note that the jury convicted Salisbury only of the multiple voting crime.

An appellate court must review jury instructions as a whole in order to determine whether they fairly and adequately inform the jury of the relevant considerations and provide a sound explanation of the applicable law to aid the jury in reaching its decision. *Kitchen v. Chippewa Valley Schools,* 825 F.2d 1004, 1010–1011 (6th Cir.1987); *United States v. Martin,* 740 F.2d 1352, 1361 (6th Cir.1984), *cert. denied,* 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985). A reviewing court may reverse a judgment if the instructions, viewed in their entirety, were confusing, misleading and prejudicial. *Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 72–73 (6th Cir.1990); *Kitchen v. Chippewa Valley Schools,* 825 F.2d at 1011.[3]

The court instructed the jury, in relevant part, as follows:

In order to establish the offense of voting more than once, the government must prove beyond a reasonable doubt each of the following elements:

First, that the defendant voted more than once in an election.

Second, that the election was a general, special, or primary election held solely or in part for the purpose of selecting or electing any candidate for the office of president, vice president, presidential elector, member of the United States Senate, member of the United States House of Representatives, delegate from the District of Columbia, Guam or the Virgin Islands, or resident commissioner of the Commonwealth of Puerto Rico.

Third, that the acts charged occurred in the Southern District of Ohio, on or about the dates alleged in the indictment.

The court has already defined for you the terms "knowingly" and "willfully."

In order to sustain its burden of proof on Count 2 of the indictment, the government must prove that the defendant Betty Salisbury did vote and cause others to vote more than once in the May 8, 1990 primary election held in Pike County, Ohio.

It is not necessary that the government prove beyond a reasonable doubt that the defendant Salisbury voted and caused others to vote on multiple occasions. It is sufficient if the government proves beyond a reasonable doubt one such occasion of voting more than once, but in that event, in order to return a verdict of guilty, you must unanimously agree on which, if any, occasion defendant Betty Salisbury voted more than once.

Trial Transcript, Vol. VII, pp. 73–75.

We find the district court's instruction on the count two multiple voting offense was confusing and misleading. First, the court told the jury that the government had to prove defendant voted and caused others to vote more than once. Then, in contradiction to its first statement, the court ex-

---

**3.** The government properly asserts that where the defendant acquiesces to the jury instruction at issue instead of objecting to it, a reviewing court will not address the question on appeal, unless there exists an obvious and prejudicial error. *Young v. Langley,* 793 F.2d 792, 795 (6th

Cir.1986), *cert. denied,* 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986). That is not, however, the situation here. In the instant case, the government erroneously failed to note that defendant's counsel clearly objected to the instruction on the record. Joint Appendix, p. 519.

plained that the jury does not have to find multiple instances of multiple voting. The court then told the jury that, to convict defendant on count two, the jury had to unanimously agree on one occasion where defendant voted more than once. The court, however, ultimately disallowed defendant's motion for jury interrogatories which sought to discover which occasion was the one in which the jury apparently believed defendant voted more than once.

As the preceding paragraph illustrates, it is not clear what the court instructed the jury to find. Though the statutory description of the offense of multiple voting is vague, there are at least three elements of the crime deemed to be indispensable: 1) a candidate for federal office must be on the ballot; 2) the defendant must vote more than once for a candidate; and 3) the defendant must so vote knowingly, willfully and expressly for the purpose of having her vote count more than once. *United States v. Hogue,* 812 F.2d 1568, 1576, 1582 (11th Cir.1987).

The district court confused the issue for the jury by not clarifying whether the jury had to find defendant herself voted multiple times and/or assisted others in doing so. Related to this, the district court enhanced the confusion by its failure to define "voting" as well as "voting more than once." While we acknowledge that there is little case authority on the subject, we must note that the language of the statute fails to explain at what point in the ballot process, particularly the absentee ballot process, the act of voting has occurred. The c urt needed to define what specific activit constitutes voting. For example, the jury, without guidance, could assume a person "votes" at the time she punches the hole next to the number identifying her selected candidate, when she signs her name, when she mails her absentee ballot or when the ballot is officially counted.

The Eleventh Circuit Court of Appeals, in *United States v. Hogue,* 812 F.2d at 1582, provides the sort of guidance the district court could have used in instructing the jury in the instant case. The *Hogue* court provided the following explanation of voting:

> [F]irst, for a defendant to mark a candidate selection on the ballot of some other voter in a race where that voter has not marked a candidate selection, without the expressed or implied consent of that voter, constitutes voting; and second, for a defendant to change or alter the mark on the ballot of some other voter to vote for some candidate different from the candidate selected by that voter, without the expressed or implied consent of that voter, constitutes voting.

*United States v. Hogue,* 812 F.2d at 1582. The *Hogue* instruction further mandated a unanimous jury determination that defendant had voted more than once in either of the two manners enumerated.

We concede, though, that even the *Hogue* instruction would have been insufficient in the instant case, without additional guidance defining "consent" [4] as well as a precise statement of whether a person may "vote" another's ballot without actually "marking a candidate selection" or signing the ballot.

Thus, we hold the district court's confusing, misleading and incomplete instruction on the charge of "voting more than once" constitutes reversible error.

Our review of the preceding issues has led this panel to the inescapable conclusion that the fundamental issue in this case, though not directly raised by the parties, is whether defendant received fair notice that her activities were encompassed by the 42 U.S.C. § 1973i(e) prohibition against voting more than once.

The due process clauses of the Fifth and Fourteenth Amendments require criminal statutes to provide notice to the accused of the nature and specific elements of the crime charged. *Colautti v. Franklin,* 439 U.S. 379, 390, 99 S.Ct. 675, 683, 58 L.Ed.2d 596 (1979); *North American Van Lines v. United States,* 243 F.2d 693, 697 (6th Cir.1957). The "void for vagueness"

---

4. For example, an important issue in the instant case is whether the voters consented to Salisbury's input in their voting decisions by signing the ballots.

doctrine requires that a statutory prohibition be sufficiently defined so that ordinary people, exercising ordinary common sense, can understand it and avoid conduct which is prohibited, without encouragement of arbitrary and discriminatory enforcement. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *United States v. Avant,* 907 F.2d 623, 625 (6th Cir.1990); *Nelson v. United States,* 796 F.2d 164, 167 (6th Cir.1986), *citing Arnett v. Kennedy,* 416 U.S. 134, 159, 94 S.Ct. 1633, 1646, 40 L.Ed.2d 15 (1974), *reh'g denied,* 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974), *quoting, United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973); *United States v. Thomas,* 864 F.2d 188, 194 (D.C.Cir.1988). The law must be specific enough to give reasonable and fair notice in order to warn people to avoid conduct with criminal consequences. *Kolender v. Lawson,* 461 U.S. at 357, 103 S.Ct. at 1858; *Smith v. Goguen,* 415 U.S. 566, 574, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974); *Stout v. Dallman,* 492 F.2d 992, 994 (6th Cir.1974); *United States v. Thomas,* 864 F.2d at 194–195. In addition to notice, a statute must also establish minimal guidelines to govern enforcement. *Kolender v. Lawson,* 461 U.S. at 358, 103 S.Ct. at 1858; *Smith v. Goguen,* 415 U.S. at 574, 94 S.Ct. at 1247; *United States v. Thomas,* 864 F.2d at 194.

 Due process is violated where a statute provides no definite standard of conduct, thereby giving law enforcement officers, courts and jurors unfettered freedom to act on nothing but their own preferences and beliefs. *Smith v. Goguen,* 415 U.S. at 575, 578, 94 S.Ct. at 1248, 1249. In *Smith v. Goguen,* the court found statutory language which prohibited the act of "publicly ... treat[ing] contemptuously the flag of the United States ...," unconstitutionally vague because the court believed the statute's failure to define "treats contemptuously" would permit selective law enforcement. *Smith v. Goguen,* 415 U.S. at 581–582, 94 S.Ct. at 1251. The court in *Smith v. Goguen* premised its holding, in part, upon the fact that, at the time the

conduct occurred, there was no definitive judicial application of the statute to the conduct charged. *Smith v. Goguen,* 415 U.S. at 573, 94 S.Ct. at 1247. The same is true in the instant case. The statute at issue in the instant case, however, unlike that in *Smith v. Goguen,* clearly prohibited some activities. *Smith v. Goguen,* 415 U.S. at 577–578, 94 S.Ct. at 1249. Such statutes, however, can nonetheless be void for vagueness. *Smith v. Goguen,* 415 U.S. at 578, 94 S.Ct. at 1249. This is so because, though the terms and judicial constructions of a statute may make it apply unquestionably to certain activities, its application to other activities may remain uncertain due to the absence of a stated standard for inclusion or exclusion of activities from its scope. *Smith v. Goguen,* 415 U.S. at 577–578, 94 S.Ct. at 1249.

To illustrate why 42 U.S.C. § 1973i(e) is unconstitutionally void for vagueness as applied to Salisbury, we must examine the statute in the context of its judicial constructions. *Smith v. Goguen,* 415 U.S. at 573, 94 S.Ct. at 1247; *Wainwright v. Stone,* 414 U.S. 21, 22–23, 94 S.Ct. 190, 190, 38 L.Ed.2d 179 (1973); *United States v. Poindexter,* 951 F.2d 369, 384 (D.C.Cir. 1991). *See also Winters v. New York,* 333 U.S. 507, 509, 68 S.Ct. 665, 667, 92 L.Ed. 840 (1948). We have found only two cases which provide insight into the scope of 42 U.S. § 1973i(e): *United States v. Lewis,* 514 F.Supp. at 169 and *United States v. Hogue,* 812 F.2d at 1568. *United States v. Lewis* applies 42 U.S.C. § 1973i(e) to a clear cut case of a voter casting multiple ballots and, thus, does not enlarge the scope of the prohibition against multiple voting. In contrast, as we noted earlier, *United States v. Hogue* defines multiple voting to include a person marking, changing or altering a candidate selection of another voter without the express or implied consent of that other voter. This, however, gives us no indication whether a person can illegally vote on behalf of another without physically marking the ballot or, whether a person can vote on behalf of another without consent where that other person signed the absentee ballot form. "It is not possible to

extrapolate from a case holding that a particular act is within the scope of the statute in order to determine whether a different act is also covered unless the court provides a coherent principle for inclusion or exclusion." *United States v. Poindexter*, 951 F.2d at 384. The authority cited does not allow for such an extrapolation in the instant case.

We next turn to the legislative history of 42 U.S.C. § 1973i(e) to determine whether the prohibition against "voting more than once" is unconstitutionally void for vagueness as applied to Salisbury's conduct in this case. *United States v. Avant*, 907 F.2d 623, 625 (6th Cir.1990); *Barenblatt v. United States*, 360 U.S. 109, 117–118, 79 S.Ct. 1081, 1088, 3 L.Ed.2d 1115 (1959); *United States v. Poindexter*, 951 F.2d at 379. *See also Arnett v. Kennedy*, 416 U.S. 134, 162, 94 S.Ct. 1633, 1648, 40 L.Ed.2d 15 (1974).

Our review of the legislative history reveals that 42 U.S.C. § 1973 *et seq.* was instituted by Pub.L. 97–205, entitled Voting Rights Act Amendments of 1982, to provide an enforcement mechanism for the Voting Rights Act of 1965. The exclusive reference to multiple voting appears in S.Rep. No. 97–417, 97th Cong., 2nd Cong., 2nd Sess. (1982), *reprinted in* 1982 U.S.C.C.A.N. 177, which established a prohibition against "... various criminal offenses with regard to failure to register voters, or count votes, intimidating or threatening voters, providing false registration information, and voting more than once." The legislature has provided no other insight.

On its face, the 42 U.S.C. § 1973i(e) statute simply proscribes "voting more than once." This language clearly prohibits a voter from entering a voting booth twice in order to fill out two separate ballots on her own behalf during the same election. It also prohibits marking another person's ballot in addition to one's own or multiple other persons' ballots without consent. *United States v. Hogue*, 812 F.2d at 1568. Beyond this, however, it is unclear what conduct the statute prohibits. For instance, it remains unclear, as we have al-

ready noted, whether, pursuant to 42 U.S.C. § 1973i(e), an accused has actually voted on behalf of another if the accused has not physically marked the ballot. Likewise, it is unclear whether an accused can vote on behalf of another without consent where that other person signed the ballot form.

There is no legislative or case authority indicating that Congress intended to proscribe a spouse from advising his/her partner how to vote or a political operative from encouraging a citizen to vote for a particular party or candidate. There are, we note, other laws prohibiting such a person from using threats, deceit, fraud or coercion to obtain votes for a particular candidate, issue or party. In the instant case, the entire written record and oral argument have made it abundantly clear that the parties, the district court and this court, are uncertain as to what constitutes multiple voting and whether 42 U.S.C. § 1973i(e) proscribes Salisbury's conduct in this case. Absent an amendment or judicial construction defining the act of voting more than once, the statute, as presently constituted, subjected Salisbury to criminal liability via a standard so indefinite that law enforcement personnel, the district court, and the jury were free to react to nothing more than their own individual definitions of what constitutes voting more than once to the prejudice of Salisbury. *See Smith v. Goguen*, 415 U.S. at 578, 94 S.Ct. at 1249; *United States v. Avant*, 907 F.2d at 627. 42 U.S.C. § 1973i(e), in light of the scant interpretive authority that exists, sets forth no standard with sufficient particularity for determining whether Salisbury's activities constituted voting more than once and, thus, is unconstitutionally void for vagueness as applied to this case. *See Kolender v. Lawson*, 461 U.S. at 358, 361–362, 103 S.Ct. at 1858, 1860.

Though it would seem that this panel should now simply decide whether the conduct attributed to defendant Salisbury should constitute voting more than once and thus cure the unconstitutional vagueness, we find such a course inappropriate.

**1380**

 Though it is the function of the judiciary to interpret congressional enactments to avoid unconstitutional construction, no court has a license to rewrite enactments and thereby make law. *Chapman v. United States,* — U.S. —, —, 111 S.Ct. 1919, 1927, 114 L.Ed.2d 524 (1991); *Eubanks v. Wilkinson,* 937 F.2d 1118, 1125 (6th Cir.1991). The court may, however, in some instances, cure a statute which it finds unconstitutionally vague, thus in effect charging the defendant, at the time she was accused, with knowledge of the scope of the court's subsequent interpretation. *Winters v. New York,* 333 U.S. 507, 514–515, 68 S.Ct. 665, 669–670, 92 L.Ed. 840 (1948). Where, however, a vague statute is so indefinitely defined that a reasonable defendant, at the time she was charged, could not reasonably foresee a future judicial construction proscribing her conduct, we believe it is inappropriate for a court to attempt to cure the defect and retroactively apply the construction to conduct which occurred prior to its holding. *Bouie v. City of Columbia,* 378 U.S. 347, 352–355, 84 S.Ct. 1697, 1701–1703, 12 L.Ed.2d 894 (1964); *Dale v. Haeberlin,* 878 F.2d 930, 934 (6th Cir.1989), *cert. denied,* 494 U.S. 1058, 110 S.Ct. 1528, 108 L.Ed.2d 767 (1990).

We thus decline to become legislators by attempting to retroactively expand the canopy of activities proscribed by the 42 U.S.C. § 1973i(e) multiple voting prohibition to include the conduct described in the instant case. By doing this, we do not express an opinion as to the propriety of Salisbury's conduct. We hold only that to attempt to retroactively cure the unconstitutional vagueness of 42 U.S.C. § 1973i(e), as applied, by expanding the prohibition against multiple voting would be fundamentally unfair and violative of due process. *Bouie v. City of Columbia,* 378 U.S. at 352–355, 84 S.Ct. at 1701–1703.

We hold that 42 U.S.C. § 1973i(e) is unconstitutionally void for vagueness as applied in this case. In light of this determination, we need not address defendant's remaining assignments of error.

The judgment of the district court is hereby REVERSED and VACATED.

KENNEDY, Circuit Judge, concurring in part and dissenting in part.

I agree with Judge Celebrezze that 42 U.S.C. § 1973i(e) is unconstitutionally void for vagueness as applied to the charge that Betty Salisbury voted more than once. However, in Count II she was also charged with causing others to vote more than once. I believe the evidence was sufficient to find that she caused Betty Lou Phillips to vote more than once. According to Phillips, Salisbury punched out the voting card on the absentee ballots of Betty Lou Phillips and her two sons. Phillips signed in the appropriate place for all three ballots, signing her own and her sons' names. She then gave the ballots to Salisbury who returned them to be counted. Two were counted. There is nothing vague in the application of the statute to this conduct. A person who observes another voting multiple ballots and then delivers those ballots to be counted has caused the other person to vote more than once.

Accordingly, I join in reversing the conviction in this case but would remand for retrial on Count II of the indictment insofar as it charges that Salisbury caused Betty Lou Phillips to vote more than once.