39 F.3d 1182
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Calvin McQUEEN, Defendant-Appellant.
 No. 93-1779.
 United States Court of Appeals, Sixth Circuit.
 Oct. 27, 1994.
 
 Before: KENNEDY, MARTIN and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Calvin McQueen appeals his conviction of conspiracy to distribute cocaine raising seven issues. Defendant argues that the District Court erred with respect to three evidentiary issues: admitting testimony which defendant characterizes as hearsay; preventing defendant from impeaching government witnesses; and not permitting questions defendant asserts would have led to exculpatory evidence. Defendant also contends that the court abused its discretion in denying his pretrial discovery motions and pretrial motion for a bill of particulars. Next, defendant asserts that the District Court's instruction to the jury on reasonable doubt constituted plain error. Finally, defendant argues that he was improperly denied transcripts of portions of trial, hindering him in bringing this appeal. Finding no merit in any of these issues, we affirm.
 
 I.
 
 2
 During 1989, defendant was a resident advisor at a residential treatment center for felons. Testimony at trial disclosed that in May, 1989, defendant suggested to a resident at the treatment center, Jeremy Standley, that Standley could make some money selling cocaine. Standley agreed and began obtaining crack cocaine from defendant and selling it to his friends.
 
 
 3
 Defendant next approached a cocaine seller named Anthony Bowling and suggested that they go into business together selling drugs. Bowling refused because he did not know defendant well. Defendant then contacted Rick Muldrew, a friend of Bowling, and asked him to get the cocaine. Muldrew agreed and began obtaining cocaine from Bowling and another supplier, Curtis Green, and delivering it to defendant. Bowling and Green supplied powder cocaine, but Muldrew saw defendant converting the cocaine to "crack." Defendant would then sell the cocaine and split the profit with Muldrew.
 
 
 4
 Defendant then began to work as a deputy sheriff at the Genessee County jail. Muldrew lived with him and they continued to sell cocaine. In April, 1991, Muldrew was arrested after leaving Bowling's residence possessing 1/8 kilogram of cocaine. Muldrew, fearing retaliation from defendant, denied that defendant was selling cocaine. After being indicted, shot by an unknown assailant, and sentenced to prison, Muldrew testified before a grand jury that he had been selling cocaine with defendant.
 
 
 5
 Defendant and Standley were indicted for conspiring to deliver cocaine. Standley was arrested and agreed to testify against defendant. At trial, Muldrew and Standley both testified concerning the conspiracy and the testimony of other government witnesses also implicated defendant. He appeals from his jury conviction.
 
 II.
 
 6
 Defendant contends that the District Court erred with respect to several evidentiary rulings.
 
 
 7
 First he contends that testimony by three witnesses constituted hearsay. Witness Brian Wilson was a drug user who obtained crack cocaine from Standley. Wilson testified that Standley told him "he was getting [the cocaine] from a cop" and that "the cop he got it from was busted." Joint App. at 241, 243. The statement appears to have been made after Standley's arrest and was not, therefore, in furtherance of the conspiracy.
 
 
 8
 The government urges that the statement was admissible on the grounds that it was not offered for the truth of the matter asserted, but in order to rebut defendant's contention that Standley's testimony implicating defendant had been fabricated after Standley's favorable plea bargain. We need not decide this issue, however, because any error was harmless. Standley himself testified at trial. The defense had ample opportunity to cross-examine Standley concerning his statements to Wilson.
 
 
 9
 Defendant asserts that the District Court erred in admitting portions of the testimony of two other witnesses, Mark Gilson and Curtis Green, on the grounds that the statements were not made in furtherance of a conspiracy under FED.R.EVID. 801(d)(2)(E) and thus were hearsay. The statements were those of Standley and Muldrew, both of whom testified. They appear to be in furtherance of the conspiracy but, once again, even if they were not, any error was harmless.
 
 III.
 
 10
 Defendant next argues that the District Court improperly limited his cross-examination of several government witnesses. We find that none of his contentions have merit. His first claim of error involves the testimony of Johnny Goodman, a police officer called by the government solely to identify the cocaine seized from Muldrew following his arrest. Joint App. at 95-104. On cross-examination, defense counsel asked Goodman what he heard Muldrew say during a post-arrest interview. The government's hearsay objection was sustained. Defendant contends that the testimony should have been admitted as a prior inconsistent statement under FED.R.EVID. 801(d)(1)(A). We find Rule 801(d)(1)(A) to be inapplicable to this testimony. Rule 801(d)(1)(A) permits testimony of a prior statement of a witness if it is "inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury." (Emphasis added). Muldrew's post-arrest statement was not made under oath and was otherwise inadmissible. We find no error in the District Court's ruling. In any event, defendant was not prejudiced because Muldrew himself testified at trial that he had lied to the police on this occasion. Joint App. at 120-21.
 
 
 11
 Defendant makes a similar contention of error with respect to his cross-examination of FBI agent Reinecke, who was called as a defense witness and asked about an interview he had with Muldrew. Joint App. at 201-03. Defense counsel asked Reinecke what Muldrew said about the way defendant learned Muldrew was in a hospital. A government objection on the grounds of hearsay was sustained. We find no error in this ruling.
 
 
 12
 Finally, defendant contends that the District Court erred by limiting his cross-examination of Muldrew. Defense counsel asked Muldrew "Did anyone tell you that they thought Mr. McQueen could have [shot you]?" The government objected to this question on the grounds of relevance. The court sustained the objection, but invited defense counsel to ask Muldrew whether he thought defendant had shot him, because Muldrew's state of mind would be relevant to bias. Joint App. at 200-01. Defendant did not pursue the issue, but now argues on appeal that the question went to the credibility of the witness because it tended to show that Muldrew was biased. We find no reason to reverse the trial court. Defendant could have rephrased his question in the manner suggested and elicited the evidence he sought.
 
 IV.
 
 13
 Defendant further contends that the trial court abused its discretion in denying several pretrial motions which would have required early disclosure of the government witnesses' statements and any evidence favorable to the defendant. The government complied with the discovery and inspection requirements of Rule 16 of the Federal Rules of Criminal Procedure, but refused to disclose until trial the identity of the government witnesses, their prior testimony, their prior inconsistent statements, and their criminal records. Joint App. at 33-34, 39. The government argued that compelling this disclosure before the trial would violate the Jencks Act, 18 U.S.C. Sec. 3500, and that protecting witnesses' identity was appropriate because two witnesses had already been shot, one fatally. The District Court entered a final pretrial order stating that the government would not have to produce this evidence until it was required to do so. Joint App. at 39.
 
 
 14
 The Brady rule, established in Brady v. Maryland, 373 U.S. 83 (1963), places on the government a "general obligation to disclose evidence that is favorable to the accused and material to guilt or punishment." United States v. Presser, 844 F.2d 1275, 1281 (6th Cir.1988). However, the Jencks Act limits this rule by protecting statements or reports made by government witnesses from disclosure until after that witness has testified on direct examination at trial. 18 U.S.C. 3500(a).[1] Where the potentially exculpatory evidence "is within the ambit of the Jencks Act, then the express provisions of the Jencks Act control discovery of that kind of evidence. The clear and consistent rule of this circuit is that ... the government may not be compelled to disclose Jencks Act material before trial." Presser, 844 F.2d at 1283.
 
 
 15
 Presser involved a situation similar to the case at bar where impeachment evidence was both arguably exempted from pretrial disclosure under the Jencks Act yet also was arguably exculpatory under the Brady doctrine. Id. The court concluded that the Brady doctrine "is not violated if the Brady material is disclosed "in time for use at trial," including during the trial itself. Id. The trial court here did not err when it refused to compel the government to disclose the witness information in advance of trial.
 
 V.
 
 16
 Defendant contends that the District Court erred in failing to require the government to provide specific information he requested in a bill of particulars. After defendant's motion, the government filed a bill identifying the names of defendant's major coconspirators and the defendant's alleged role in the conspiracy. Joint App. at 42. Defendant had requested the names of all the alleged coconspirators and the specific dates and places of all alleged acts in furtherance of the conspiracy.
 
 
 17
 Bills of particulars are intended to inform a defendant of the charge with sufficient precision to allow preparation for trial, to prevent surprise during trial, and to provide a basis for a plea of double jeopardy if the defendant is later charged with the same crime. United States v. Birmley, 529 F.2d 103, 108 (6th Cir.1976). "The decision to order a bill of particulars is within the sound discretion of the trial court. An abuse of discretion exists only when the reviewing court is firmly convinced that a mistake has been made." United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir.1993) (citation omitted). A district court does not abuse its discretion in denying an order for a bill of particulars where the purpose of the bill is to obtain a list of the government's witnesses. United States v. Largent, 545 F.2d 1039, 1043 (6th Cir.1976), cert. denied, 429 U.S. 1098 (1977). Defendant's request for the names of the alleged coconspirators here is nothing more than a request for such a list. In addition, "a defendant is not entitled to discover all the overt acts that might be proven at trial." Salisbury, 983 F.2d at 1375. The bill which the government filed identified who supplied, delivered, packaged and sold the cocaine.[2] This was sufficiently specific to allow defendant to understand the nature of the conspiracy and to prepare for trial. Joint App. at 42. Therefore, we find that the District Court did not abuse its discretion by not requiring the government to file a more detailed bill of particulars.
 
 VI.
 
 18
 Defendant complains that the District Court erroneously sustained several objections where the questions were intended to lead to discoverable evidence favorable to defendant. The allegedly erroneous rulings are as follows: (1) During defendant's direct examination of agent Reinecke, Reinecke testified that he was not familiar with a raid at coconspirator Bowling's residence. When defense counsel asked Reinecke what had been seized during the raid, the District Court sustained the government's objection on hearsay grounds. Joint App. at 202-03. (2) Witness Michael Ripenbark testified that he purchased cocaine from defendant at the house of an Edward Ackerman, who had since moved to Florida. Defense counsel asked who the present owner of the house was and the government's objection was sustained on relevance grounds. Joint App. at 210. (3) Defense counsel then attempted to question Ripenbark about the address of Ripenbark's ex-girlfriend. In response to the government's relevance objection, defendant argued that he needed her present address to locate her. The objection was sustained. Joint App. at 211. (4) Ripenbark later testified that he and his friends would pool money to purchase cocaine. Defense counsel asked who these friends were and the government objected on relevance grounds. In a sidebar conference, the District Court stated that defendant could not bring up irrelevant matters in front of the jury and could contact the witness later. Joint App. at 212-13.
 
 
 19
 Determinations of relevance are left to the broad discretion of the trial court. United States v. Breitkreutz, 977 F.2d 214 (6th Cir.1992). Otherwise inadmissible evidence cannot be introduced to further defendant's discovery effort during the trial itself. Thus, the District Court did not abuse its discretion in preventing defendant from pursuing these lines of questioning.
 
 VII.
 
 20
 Defendant next claims that the trial court committed plain error by misinstructing the jury on the standard of proof beyond a reasonable doubt. Defendant claims that the jury was not instructed that it must find defendant guilty beyond a reasonable doubt because the District Court left out the word "guilty" from one of the instructions:
 
 
 21
 Proof beyond a reasonable doubt means proof which is so convincing that you would rely and act on it without hesitation in making the most important decisions in your own lives. If you are convinced that the government has proved the defendant beyond a reasonable doubt--excuse me, beyond a reasonable doubt, say so by returning a guilty verdict. If you are not so convinced, say so by returning a verdict of not guilty.
 
 
 22
 Joint App. at 253. Defendant asserts that the jury could have found the defendant guilty if it proved the identity of the defendant, rather than defendant's guilt. Defendant also contends that the first sentence of the instruction is erroneous as a matter of law.
 
 
 23
 If a defendant fails to object to jury instructions at trial, reversal is required only where the omission in the words of the jury instruction constituted plain error. United States v. Hook, 781 F.2d 1166, 1173 (6th Cir.), cert. denied, 479 U.S. 882 (1986). Plain error is found "solely to avoid a miscarriage of justice" and "only on appeal from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it." Id. (citation omitted). "An improper jury instruction will rarely justify reversal of a criminal conviction when no objection has been made at trial." Id. at 172-73.
 
 
 24
 Judged by this standard, no plain error occurred with respect to the jury instruction here. The first sentence of the jury instruction is substantially identical to the first sentence of Instruction 1.03 of the pattern jury instructions used in this Circuit[3] and has been upheld by this Court. United States v. Mars, 551 F.2d 711, 716 (6th Cir.1977). Furthermore, although the District Court left out the word "guilty" from this paragraph of the charge, this does not rise to the level of plain error considering the charge as a whole. Immediately preceding the challenged instruction, it was stated three times that the government prove the defendant guilty beyond a reasonable doubt. Joint App. at 252-53. The necessity of finding guilt beyond a reasonable doubt was also repeated many times after the mistake was made and the jury was given a written copy of the instructions. Joint App. at 254-60. Any possible prejudice would have been cured by the court's emphasis of the correct standard throughout the instructions.
 
 VIII.
 
 25
 Defendant also asserts that he was potentially prejudiced in his appeal by the failure of the District Court to provide him with a transcript of the voir dire, opening statement, and closing argument. This Court authorized counsel for the defendant to purchase a copy of the tapes of these portions of the trial, with a transcript to be provided if defendant's counsel found any errors in these portions of the trial. Counsel advises us he has reviewed the tapes and defendant does not claim error in those portions of the trial. The issue is therefore moot.
 
 IX.
 
 26
 For the foregoing reasons, we AFFIRM defendant's conviction.
 
 
 
 [1]
 18 U.S.C. Sec. 3500(a) reads, in part: "In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."
 
 
 [2]
 The bill of particulars read, in relevant part, "Bowling was a regular supplier of cocaine to Muldrew and McQueen. McQueen repackaged the cocaine; occasionally converted it to "crack"; and sold it to numerous individuals including Standley. Standley obtained cocaine from McQueen and sold it in powder or "crack" form to numerous individuals."
 
 
 [3]
 Pattern Jury Instruction 1.03(5) states: "Proof beyond a reasonable doubt means proof which is so convincing that you would not hesitate to rely and act on it in making the most important decisions in your own lives. If you are convinced that the government has proved the defendant guilty beyond a reasonable doubt, say so by returning a guilty verdict. If you are not convinced, say so by returning a not guilty verdict."