**UNITED STATES of America,
Plaintiff,**

**v.**

**Reginald HAYES, Defendant.**

No. 03–CR–80156.

United States District Court,
E.D. Michigan,
Southern Division.

May 27, 2005.

Matthew J. Schneider, U.S. Attorney's Office, Detroit, MI, for Plaintiff.

John F. Royal, Detroit, MI, for Defendant.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR DISCOVERY

WHALEN, United States Magistrate Judge.

Before the Court is Defendant Reginald Hayes' Motion for Discovery of Witnesses and Evidence Pertaining to Prior Incidents of Police Misconduct by Key Government Witness [Docket # 46], which has been referred for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A). Oral argument on this motion was held on April 26, 2005. For the reasons set forth below,

Defendant's Motion will be granted in part and denied in part.

## I. FACTS

The Defendant is charged with a single count of being a felon in possession of a firearm, 18 U.S.C. § 922(g). This charge arose out of Defendant's arrest by the Detroit Police on or about January 29, 2003. Before he was apprehended, the Detroit Police Officers involved in the arrest chased Defendant on foot. Officer Antonio Carlisi, the witness who is the subject of the present motion, stated, and will presumably testify at trial, that he saw the Defendant throw something to the ground during the chase, and that he subsequently found a handgun in a nearby field. The Defendant, on the other hand, denies throwing anything down in the field, and denies possession of the handgun.[1]

On January 13, 2000—approximately three years before the Defendant's arrest—Officer Carlisi, along with several other Detroit Police Officers, was indicted by a federal grand jury in the Eastern District of Michigan (*United States v. Rice, et.al.*, Docket No. 99–80796). Officer Carlisi was charged with conspiracy to violate civil rights, 18 U.S.C. § 241 (Count I); violation of Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1962(c) (Count IV); conspiracy to violate RICO, 18 U.S.C. § 1962(d) (Count V); conspiracy to commit extortion, 18 U.S.C.

---

1. Defendant summarizes his theory of the defense as follows:

"It is the defense of Defendant Hayes in this case that he was running from individuals in civilian clothing who approached him in a threatening manner, whom he reasonably believed to be about to rob and assault him. These individuals, who turned out to be plainclothes Detroit Police Officers, chased and apprehended Mr. Hayes. Further, the defense contends that Officer Carlisi, in order to

justify an otherwise unlawful stop and arrest, is falsely claiming that an object was discarded by Mr. Hayes as he ran. Further, the defense contends that Officer Carlisi, and/or a fellow officer, subsequently produced a 'throw-down' weapon which Officer Carlisi falsely claims he found in the area where he falsely claims he saw Mr. Hayes throw something down." *Defendant's Motion for Discovery,* ¶ 9.

§ 1951 (Count VI); and being an accessory after the fact to the deprivation of rights charge, 18 U.S.C. § 3.

Officer Carlisi was given an FBI-administered polygraph examination on May 15, 2000. On August 2, 2000, the government moved to dismiss the indictment against Officer Carlisi, stating that the "motion is based on the government's acquisition of exculpatory information regarding defendant Carlisi which causes the government to believe that the interests of justice require a dismissal." On August 3, 2000, Judge Feikens dismissed the indictment against Carlisi.

Defendant now seeks discovery from the government of three categories of material: (1) information in the possession of the government relating to allegations of police misconduct and/or criminal activity on the part of Officer Carlisi, including witness statements, investigative reports, and grand jury testimony; (2) identifying information, including names, addresses, telephone numbers and driver's license numbers, of all civilian witnesses who provided information which led to the indictment of Officer Carlisi; and (3) Detroit Police Department records, including civilian complaints and Internal Affairs Division records, involving complaints or investigations of police misconduct involving Officer Carlisi.

## II. LEGAL PRINCIPLES

■ As opposed to the broad scope of discovery in civil cases,[2] the discovery available to a criminal defendant is relatively constricted, and is generally circumscribed by three rules: (1) Fed.R.Crim.P. 16; (2) The Jencks Act, 18 U.S.C. § 3500; and (3) the doctrine set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10

L.Ed.2d 215 (1963). *See United States v. Presser*, 844 F.2d 1275, 1285 n. 12 (6th Cir.1988) (stating that in most criminal prosecutions, these three rules "exhaust the universe of discovery to which the defendant is entitled").

Rule 16 requires the government to disclose, upon a defendant's request, any oral or written statements of the defendant, the defendant's prior record, any documents or tangible evidence within the government's possession, custody or control, reports of examinations or tests, and a summary of any expert witness testimony.[3]

The Jencks Act "generally requires the government, on motion of a defendant, to produce statements in its possession of witnesses who testify at a trial." *United States v. Short*, 671 F.2d 178, 185 (6th Cir.1982). However, the defendant has a right to production of such statements only after the witness has testified on direct examination. 18 U.S.C. § 3500(a).

*Brady v. Maryland* holds that the government violates due process when it fails to disclose evidence favorable to the accused in a criminal case, if the evidence is material to guilt or sentencing. *Id.*, at 87, 83 S.Ct. 1194. The *Brady* rule extends to evidence which could be used to impeach the credibility of a government witness. *Giglio v. United States*, 405 U.S. 150, 154–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (impeachment evidence falls within *Brady* "[w]hen the reliability of a given witness may well be determinative of guilt or innocence"). Evidence is "material" for purposes of *Brady* and *Giglio* if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419,

---

**2.** *See* Fed.R.Civ.P. 26(b).

**3.** The requirements of Rule 16 are incorporated into this Court's Standing Order for Discovery and Inspection in Criminal Cases, Administrative Order 99–AO–003.

433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). A "reasonable probability," in turn, is "a probability sufficient to undermine confidence in the outcome." *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375. In *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Court held that if the exculpatory evidence "creates a reasonable doubt" as to the defendant's guilt, it is material.

The typical *Brady* issue is retrospective, that is, the court examines the materiality of the non-disclosed evidence in the context of a completed criminal trial which has resulted in a verdict of guilty, to assess the probable effect of the evidence on the verdict. Regarding pretrial *Brady* disclosure, the Sixth Circuit in *Presser* observed that "the government typically is the sole judge of what evidence in its possession is subject to disclosure. If it fails to comply adequately with a discovery order requiring it to disclose *Brady* material, it acts at its own peril." 844 F.2d at 1281. Indeed, the Supreme Court has stated that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one...." *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).

█ However, the Court retains the inherent authority to order the disclosure of *Brady* material prior to or during trial. In *Presser,* the Court held that *Brady* material must be disclosed "in time for its effective use at trial." *Id.,* 844 F.2d at 1283. In *United States v. Hart,* 760 F.Supp. 653, 655 (E.D.Mich.1991), the Court held:

> "Although ... pretrial disclosure of *Brady* material is not required, it is clear that a 'district court has general

authority to order pretrial disclosure of *Brady* material to ensure the effective administration of the criminal justice system.' *United States v. Starusko,* 729 F.2d 256, 261 (3rd Cir.1984)."

In *Starusko,* cited copiously in *Hart,* the Third Circuit categorically rejected the argument that "it is the government, not the district court, that in the first instance is to decide when to turn over *Brady* material." *Id.,* 729 F.2d at 261.[4]

█ Where a defendant seeks disclosure of grand jury transcripts, Fed. R.Crim.P. 6(e) comes into play. Rule 6(e)(3) provides that grand jury proceedings, including transcripts, are subject to a general rule of secrecy, and may not ordinarily be disclosed. However, Rule 6(e)(3)(C)(i) sets forth the following exception:

> "Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—
> (i) when so directed by a court preliminarily to or in connection with a judicial proceeding."

The decision whether to disclose grand jury testimony under this rule is entrusted to the discretion of the court. *United States v. Short, supra,* 671 F.2d at 184. However, that discretion is not absolute, *id.,* and before disclosure is ordered, the defendant must show a "compelling necessity" for breaking the "indispensible secrecy of grand jury proceedings." *United States v. Procter & Gamble Co.,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *Short, supra,* at 184. A compelling necessity is shown by demonstrating a "particularized need" for the disclosure. *Procter & Gamble* at 683, 78 S.Ct. 983.

---

**4.** The Sixth Circuit in *Presser* cited *Starusko,* along with *United States v. Higgs,* 713 F.2d 39 (3rd Cir.1983), for the proposition that *Brady* material must be disclosed in time for its

effective use at trial. *Presser* addressed the situation where evidence which was exculpatory within the meaning of *Brady* and *Giglio* also fell within the scope of the Jencks Act.

## III. ANALYSIS

The Defendant's discovery request does not appear to fall within the scope of Rule 16. Because the request does not involve any statement made by witness Carlisi, the Jencks Act does not apply. Thus, the requested information is discoverable only if it is material and exculpatory under *Brady* and its progeny.

### A. Material Relating to Carlisi's Indictment and Prosecution

■ The first category of material involves evidence developed in the course of the criminal proceedings against Officer Carlisi, including witness statements, investigative reports (i.e., F.B.I. "302's"), and grand jury transcripts relating to Carlisi.[5]

Any facts related to Officer Carlisi's indictment, which predated the Defendant's arrest by three years, could not be *directly* exculpatory under *Brady* regarding the events of January 29, 2003. Rather, the question is whether the evidence is impeachment material which falls within *Giglio*. Or, as Judge Gadola termed it in *United States v. Hart, supra,* 760 F.Supp. at 655, is it "nonexculpatory impeachment material covered by *Brady* and not covered by the Jencks Act?"

Although the government acknowledges that "a witness can be impeached with evidence of prior misconduct involving truthfulness,"[6] *Government's Response;* at 13, it argues that anything related to Carlisi's case could not be material because "the dismissed indictment against Carlisi did not focus on allegations that Carlisi had been untruthful." *Id.* A perusal of the indictment suggests otherwise.[7] For example, while the Count I conspiracy charge is premised in part on warrantless

entries, searches and arrests, robberies, use of excessive force and intimidation, it also alleges, at ¶ 12, that the conspirators (including Carlisi) perpetuated the pattern of civil rights violations "by not bringing those abuses to the attention of their superiors *or by otherwise covering up for their fellow officers*" (emphasis added). Part of the defense theory in Defendant's case is that either Carlisi *or one of his fellow officers* planted the "throw down" weapon, and that Carlisi was complicit in the deception. Further, in the Count IV RICO charge against Carlisi, the indictment alleges that Carlisi and his co-conspirators had the duty to make "full, truthful and accurate reports of their official activities," and that "[i]n order to avoid detection, defendants would falsify police reports." *Carlisi Indictment,* ¶¶ 7, 13. In Count X (accessory after the fact), Carlisi is accused of making and submitting a false police report.

Thus, the charges against Officer Carlisi did involve "prior misconduct involving truthfulness," including the making of false and deceptive police reports, and facts related to any such activity constitute impeachment evidence. The question for purposes of the present motion is whether the information meets the materiality test of *Brady* and, more importantly, *Giglio*.

Again, the general standard of materiality is that there must be a reasonable probability that the evidence would change the verdict from guilty to not guilty. *Kyles v. Whitley, supra.* In the context of impeachment evidence, that degree of "reasonable probability," and hence materiality, is a direct function of the importance of the witness who is to be im-

---

**5.** This would essentially comprise evidence which would have been available to Carlisi under Rule 16 and Jencks if he had proceeded to trial in his own case.

**6.** *See* Fed.R.Evid. 608(b).

**7.** The First Superseding Indictment against Carlisi is appended to Defendant's motion as Exhibit A.

peached. In *Giglio*, where the prosecution failed to disclose its plea agreement with the *only* witness linking the defendant to the crime, the Court held that "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' non-disclosure of evidence affecting credibility falls within [the *Brady* rule]. (citation omitted)." *Id.*, 405 U.S. at 154, 92 S.Ct. 763. The *Giglio* Court found it significant that the government's case rested "almost entirely" on the witness' testimony. *Id.*, 405 U.S. at 154–55, 92 S.Ct. 763. In *United States v. Hart, supra,* 760 F.Supp. at 656, the court held that "evidence that tends to impeach a *key* government witness falls within the ambit of *Brady* if the witness' credibility is material to the question of. guilt." (Emphasis in original).

In *United States v. Starusko, supra,* 729 F.2d at 261, the court held that the importance of a government witness was so obvious that it ordered pretrial disclosure of the impeachment material under *Brady* and *Giglio*:

> "Moreover, we find the report to be material. We recognize that, generally, it is difficult to analyze, prior to trial, whether potential impeachment evidence falls within *Brady* without knowing what role a certain witness will play in the government's case. *Agurs*, 427 U.S. at

108, 96 S.Ct. at 2399; *Higgs,* 713 F.2d at 43. But here, Logan's role is clear. He is the linchpin of the prosecution's case. It logically follows, therefore, that the second F.B.I. report, which affects his credibility and sheds light on the underlying question of substantive guilt, is material for impeachment purposes. It is "obviously of such substantial value to the defense that elementary fairness requires it to be disclosed." *Agurs,* 427 U.S. at 110, 96 S.Ct. at 2401." (Emphasis added).

Similarly in the present case, Officer Carlisi is the only witness who in any way links the Defendant with the firearm on which this prosecution is based. No less than the witnesses in *Giglio* and *Starusko,* Carlisi is the centerpiece of the prosecution, and a fair determination of his credibility is of paramount importance to the question of guilt or innocence. Therefore, even from a pretrial perspective, it is obvious to this Court that the evidence which relates to the government's investigation and prosecution of Officer Carlisi is material and discoverable under *Brady* and *Giglio.*[8]

As to the requested grand jury transcripts in Carlisi's case, the Defendant has made the necessary showing of a "particularized need." *Procter & Gamble, supra.*

---

8. The fact that the government ultimately dismissed the indictment against Carlisi is not controlling, and does not necessarily imply "total vindication," as the government contends. The prosecution may well have made a strategic decision based on its own calculation of the strength of its overall case, the probability of conviction, and perhaps the effect of Carlisi's presence on its case against the other defendants whom the prosecution may have considered more major players in the overall conspiracy. The more important point is that there was sufficient evidence to convince a federal grand jury that there was probable cause to indict Carlisi. Unless one subscribes to the view that the grand jury is a mere rubber stamp for the U.S. Attorney's

Office—that it would, to use a hackneyed phrase, "indict a ham sandwich"—the grand jury's assessment of the evidence that Carlisi participated in falsifying police reports and engaging in deceptive behavior during the course of his official duties is significant. While I do not necessarily or precisely equate the terms "probable cause" (to believe that Carlisi committed offenses) and "reasonable probability" (that the impeachment evidence would affect the verdict), I am satisfied that under the facts of this case, including Carlisi's overwhelming importance to the government's case, the grand jury's determination of Carlisi's culpability supports a finding of materiality.

To reiterate, Carlisi is the sole witness supporting the firearm charge, the jury's assessment of his credibility is crucial, and the prior charges against him involve dishonesty, making false police reports, and covering up the misdeeds of fellow officers. In *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), the Court found that the defendant had met the showing of "particularized need" for grand jury transcripts based in part on the fact that they involved the testimony of key government witnesses, and that the testimony of these witnesses was largely uncorroborated. Disclosure of grand jury testimony related to Carlisi may therefore be disclosed in conjunction with the Defendant's case, pursuant to Fed.R.Crim.P. 6(e)(3)(C)(i).[9]

Therefore, the Defendant's motion for disclosure is GRANTED with respect to all information in the possession of the government relating to allegations of police misconduct and/or criminal activity on the part of Officer Carlisi which formed the basis of the federal prosecution of Carlisi, including witness statements, investigative reports, and grand jury testimony. Further, consistent with *United States v. Hart, supra,* the government must disclose this material to the Defendant "as expeditiously as possible and in advance of trial."[10]

### B. Contact Information for Witnesses

■ At this stage of the proceedings, the Defendant's request for addresses, telephone numbers and other contact information for witnesses who provided information against Carlisi goes beyond the scope of *Brady* and *Giglio,* which do not provide a generalized right of discovery or assistance in investigation. *Weatherford v. Bursey, supra.*

### C. Detroit Police Department Records

To the extent that the government is in possession of any reports or records of the Detroit Police Department, including the Internal Affairs Division, which were used in conjunction with the federal prosecution of Officer Carlisi, that evidence shall be disclosed for the reasons and under the terms set forth in section III-A of this Opinion and Order.[11]

## IV. CONCLUSION

For these reasons, Defendant's motion to compel the disclosure of information in the possession of the government relating to allegations of police misconduct and/or criminal activity on the part of Officer Carlisi, including witness statements, investigative reports, and grand jury testimony in conjunction with Officer Carlisi's indictment and prosecution, is GRANTED, and the government shall disclose this material to the defense as expeditiously as possible and in advance of trial.

Defendant's motion to compel disclosure of identifying information of all civilian witnesses who provided information which led to the indictment of Officer Carlisi is DENIED.

Defendant's motion to compel the disclosure of Detroit Police Department records involving complaints or investigations of police misconduct involving Officer Carlisi is GRANTED to the extent that the gov-

---

9. I also note that there would be little prejudice to either the government or to grand jury witnesses, given that much of the grand jury testimony was likely given to Carlisi's codefendants under the Jencks Act.

10. Trial is scheduled to commence May 31, 2005.

11. Officer Carlisi's personnel or disciplinary record is arguably subject to a defense subpoena of the Detroit Police Department. That issue, however, is not before the Court at this time.

ernment is in possession of this information.

SO ORDERED.